# Gilboy *v.* Duryea Borough, Appellant.

*Townships — Indebtedness — Judgment — Collateral attack — Act of March 31, 1864, P. L. 162.*

1. Under the Act of March 31, 1864, P. L. 162, entitled, "An Act relating to the collection of district and township debts in the several counties of this commonwealth," the confirmation by the court of quarter sessions of the report of a commissioner appointed to ascertain and marshal the indebtedness of the township is not a judgment conclusively binding upon the township as to the debts included in the report, and the township may thereafter show that prior to the confirmation of the report certain judgments included therein had been wholly or partially paid.

2. The act of 1864 did not create a tribunal to determine the rights of parties under a contract or to ascertain the indebtedness due from one party to another. It did not confer upon the court of quarter sessions the authority to inquire and determine whether a judgment obtained in a court of common pleas or before a justice of the peace had been paid or satisfied. It did not invest in a commissioner, appointed by the quarter sessions, authority to adjudicate controverted

claims between a municipality and its creditors, nor did it make the report of such commissioner, confirmed by the quarter sessions, a judgment having that effect.

Argued April 11, 1910. Appeal, No. 29, Jan. T., 1910, by defendant, from judgment of C. P. Luzerne Co., Oct. T., 1900, No. 1,029, on verdict for plaintiff in case of J. B. Gilboy, Administrator of the Estate of M. F. Corcoran, deceased, v. Duryea Borough. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Issue to determine the validity of a judgment. Before FERRIS, J.

At the trial defendant made the following offer:

I propose to prove by the witness on the stand that he was attorney for Paul Urban, treasurer of Marcy township, in the year 1898, and that the sum of $3,000, license money to which the township was entitled that year, was paid by the treasurer of Luzerne county to Mr. Urban and by Mr. Urban paid to Mr. McAniff, and that under the direction of Paul Urban, treasurer, Mr. McAniff paid out the sum of $1,035 to M. F. Corcoran to apply on indebtedness owed to him by Marcy township, and allowed in the indebtedness proceedings before Thomas D. Shea, that proceeding that I have offered in evidence, No. 801, September Sessions, 1897.

Plaintiff's counsel: When was this payment?

Defendant's counsel: One payment by check, September 3, 1898, $500; and a few days later, between the third and tenth of September, another payment of $535, in the year 1898.

Plaintiff's counsel: This is objected to as being incompetent, irrelevant and immaterial, for the reason that the marshal's report in which these claims were allowed, was not filed until September 29, 1898, the same day confirmed nisi and was not confirmed absolutely until March 11, 1899, and therefore could not have been in payment of any claims allowed by the marshal; that the

present indebtedness for which this issue has been framed is res adjudicata.

Defendant's counsel: I would like to get in a little additional to my offer, if the court please, as follows: and to apply on any indebtedness of Marcy township to M. F. Corcoran.

The Court: Objection sustained for the reason that in the opinion of the court the confirmation absolute of the commissioner's report on March 11, 1899, as appears already in evidence, was an adjudication by this court, and a judgment of this court that at the date of said confirmation there still· remained due and therefore as yet unpaid the claims allowed to M. F. Corcoran by commissioner, and that to show a previous payment of those claims in whole or in part would be an attack upon that judgment of the court, which in our opinion could not be made collaterally, but would have to be made by a direct proceeding. Exception noted, bill sealed for the defendant. [1]

The facts appear by the opinion of the Supreme Court.

The trial judge directed a verdict for plaintiff.

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* among others were (1) ruling on evidence, quoting the bill of exceptions; (2) in giving binding instructions for plaintiff.

*John D. Farnham*, with him *M. H. Salsburg*, for appellant.—The confirmation of the commissioner's report was not conclusive: Lehigh Coal & Nav. Co.'s App., 112 Pa. 360; Walker v. Phila., 195 Pa. 168; Chandler's App., 100 Pa. 262.

*J. L. Lenahan*, with him *C. B. Lenahan*, for appellee.— The judgment of the court of March 11, 1899, being unappealed from, conclusively fixed the liability of the defendant: Marsh v. Pier, 4 Rawle, 273; Lamb v. Miller, 18

Pa. 448; Coleman v. Coleman, 19 Pa. 100; Dyer's App., 3 Grant, 326; Williams v. Row, 62 Pa. 118; Finley v. Hanbest, 30 Pa. 190.

OPINION BY MR. JUSTICE MESTREZAT, May 9, 1910:

If the learned trial judge had properly applied the rule announced in his charge, viz.: that a judgment of a court of competent jurisdiction cannot, in the absence of fraud or collusion, be attacked in a collateral proceeding, or if counsel had directed his attention to the reported decisions of his own and the appellate courts of the state, the error complained of would not have been committed and there would have been no occasion for this appeal.

M. F. Corcoran, plaintiff's intestate, obtained seven judgments against Marcy township, Luzerne county, before a justice of the peace, and transcripts thereof were filed in the common pleas of that county. In each case the defendant took "a rule to show cause why an issue should not be awarded to try whether or not the above judgment has been paid or discharged." The rule was made absolute and an issue was duly framed. The defendant claimed the judgments had been paid, and pleaded non assumpsit, payment and set-off, with leave, etc. On the trial of the case in the common pleas, it appeared that at September Sessions, 1897, the court of quarter sessions of Luzerne county appointed a commissioner "to ascertain and marshal the indebtedness of Marcy township (in which the defendant borough was then included) and report thereon." The commissioner made his report, which was confirmed absolutely on March 11, 1899, and a mandamus was ordered to be issued directing the supervisors of the township to levy a special tax to pay the indebtedness of the township. The plaintiff's judgments were presented to the commissioner and were a part of the indebtedness of the township reported by him. This proceeding was taken under the Act of March 31, 1864, P. L. 162, 2 Purd. (12th ed.) 1998, entitled, "An act relating to the collection of district

and township debts in the several counties of this Commonwealth." It was contended by the plaintiff and so held on the trial of the cause in the court below that the confirmation of the commissioner's report was an adjudication by the court of the amount due on the plaintiff's judgments at that date, and the defendant could not show that prior to the confirmation of the report, the judgments had been wholly or partially paid. The learned judge held the confirmation of the commissioner's report to be a judgment of the quarter sessions which was conclusive as to the amount due the plaintiff on his claim against Marcy township (now the defendant borough), and "that to show a previous payment of those claims in whole or in part would be an attack upon that judgment of the court." This ruling is assigned for error and raises the controlling question in the case.

The act of 1864 provides as follows: "When it shall be shown to the court of quarter sessions of any county of this state, that the debts due by any district or township in said county shall exceed the amount which supervisors or overseers may collect, in any year, by taxation, as at present regulated, or when the proper officers refuse to levy a tax for the purpose set forth in sec. 7 of the Act of February 28, 1835, P. L. 45, it shall and may be lawful for said court, after ascertaining by proper means the amount of indebtedness of any particular district or township, by a writ of mandamus, to direct the proper officers, by special taxation, to collect an amount sufficient to pay the same." The learned judge of the court below misconstrued the purpose and effect of the statute, and it resulted in error in his rulings on the trial of the issue awarded to determine whether or not the judgments against the defendant had been paid.

The act of 1864 did not create a tribunal to determine the rights of parties under a contract or to ascertain the indebtedness due from one party to another. It did not confer upon the court of quarter sessions the authority to inquire and determine whether a judgment obtained

in a court of common pleas or before a justice of peace had been paid or satisfied. It did not invest in a commissioner, appointed by the quarter sessions, authority to adjudicate controverted claims between a municipality and its creditor, nor did it make the report of such commissioner, confirmed by the quarter sessions, a judgment having that effect. The statute does not provide that creditors shall have notice of the proceeding or appear and present their claims to the commissioner, nor authorize an appeal by the creditor or municipality from the report of the commissioner as confirmed by the court. It does not provide that the parties may appear before the commissioner and produce their claims with the evidence to support them, nor that the report of the commissioner, confirmed by the court, shall be a judgment concluding the parties as to the indebtedness ascertained and reported by him against the municipality. It is apparent, therefore, that a commissioner, appointed under the act has no authority to pass upon or determine the merits of contested claims against the municipality. Constitutional and statutory tribunals have been created for that purpose, and there is nothing in the statute of 1864 which leads to the conclusion that it was enacted for the purpose of ousting their jurisdiction. The commissioner is not authorized to determine the existence or nonexistence of a contested claim presented against the municipality. On the contrary, the indebtedness to be reported by the commissioner is such as has been previously ascertained and fixed, as by judgment, the auditor's settlement, or otherwise, and the decree of the quarter sessions is simply executionary: Lehigh Coal & Navigation Co.'s App., 112 Pa. 360; Hower's App., 127 Pa. 134; Plains Township's App., 21 Pa. Superior Ct. 68; Jenkins Twp. v. Borough of Yatesville, 1 Kulp, 190; In re Indebtedness of Wilkes-Barre Twp., 4 Kulp, 83; In re Lackawanna Twp., 15 York Leg. Rec. 202. The purpose of the statute was, as between the parties, not to authorize the quarter sessions to determine the va-

lidity or payment of a judgment entered in the common pleas or by a justice of the peace, nor to determine the validity or legality of a claim against the municipality, but to obtain the duly ascertained indebtedness of the municipality to enable the quarter sessions to compel its payment by the executionary process provided in the statute.

In determining the issue, whether the judgments obtained against the defendant had been paid or discharged, therefore, the report of the commissioner, confirmed by the court of quarter sessions, under the act of 1864, did not prevent the defendant from showing payment of the judgments' prior or subsequent to the confirmation of the report.   It is settled law, and so recognized in the learned judge's charge to the jury in this case, that the judgment of a court of competent jurisdiction is conclusive and, in the absence of fraud or collusion, cannot be impeached in a collateral proceeding.   This principle applies to judgments obtained before a justice of the peace: Billings v. Russell, 23 Pa. 189; McDonald v. Simcox, 98 Pa. 619.   It is apparent, therefore, that the commissioner appointed by the court of quarter sessions under the act of 1864 had no authority to inquire into and determine the question raised by the issue being tried in the present case, to wit, whether the judgments held by the plaintiff against the defendant borough had been paid or discharged.   He was required to report the judgments as he found them on the record as an existing indebtedness. In Plains Township's App., 206 Pa. 456, Mr. Justice Brown, speaking for the court, says (p. 557): "If, in the proceeding (under act of 1864) before it, the court of quarter sessions had decided that the judgments against the township of Plains in the common pleas and on the dockets of the various justices of the peace were not conclusive of its indebtedness to the respective plaintiffs, there would have been the grossest irregularity on the face of the record.   In the sessions these judgments from the common pleas and the courts not of record were, of

course, conclusive." It necessarily follows that as the commissioner was without authority to determine either the legality of the judgments or whether they had been paid in whole or in part, that on an issue in the common pleas to determine the question the report of the commissioner did not conclude the defendant borough nor prevent it showing the payment and discharge of the judgments. The first, second and third assignments of error must, therefore, be sustained.

The other assignments need not be considered. We may say, however, that the defendant has the right to show any payments on the judgments made to the plaintiff or to any other person duly authorized by him to receive payment. If Donnelly was the plaintiff's counsel of record, authorized to collect and receive payment of the judgments, the fact that he did not account to his client for money paid him on the judgments would not prevent Donnelly from being a witness to show that payment was made to him, notwithstanding the death of his client. The contest here is not between Donnelly and the estate of his deceased client, but between the latter and the defendant borough and hence the borough may show by Donnelly any payments made by it to the plaintiff's authorized agent or attorney.

The judgment is reversed with a venire facias de novo.