# Pittsburgh & Lake Erie R. R. *v.* McKees Rocks Borough, Appellant.

*Res judicata — Parties — Coparties—Adverse interests—Public Service Commission.*

1. Where res judicata is set up as a defense, it is not necessary that exactly the same parties should appear in both the former and the later case; it is sufficient if all those in the later case were parties in the former one.

2. A judgment may be res judicata as between coparties if they asserted adverse interests in the former proceeding.

3. It seems that an order of the Public Service Commission unappealed from, may be set up as res judicata in a later proceeding in court.

*Public Service Commission—Powers—Setting aside contract—Contract between railroad company and borough as to overhead bridge—Repairs—Consideration—Ultra vires—Acts April 3, 1851, P. L. 320, and June 9, 1874, P. L. 282.*

4. The Public Service Commission has no power to set aside a contract between a borough and a railroad company wherein the railroad company agreed to construct an overhead bridge, and the borough agreed to maintain and repair it, and especially is this so where the contract was made as far back as 1902.

5. Wl ere such a bridge falls into disrepair and the Public Service Commission orders the railroad company to repair it, and assesses a specified amount on the county and a specified amount on the borough on account of the repairs and these amounts are paid, there is nothing to prevent the railroad company from thereafter suing the borough on its contract to recover the balance of the cost of the repairs unpaid. The doctrine of res judicata has no application to such a case.

6. Where a railroad company, under no obligation to build an overhead bridge, contracts with a borough to do so, and the borough agrees to pay for the repairs of the bridge, there is a substantial consideration for the contract, especially if it appears that the

railroad company purchased the approaches to the bridge and built a more substantial structure than necessary in order to accommodate a street railway company which paid the borough for its use.

7. Under the Borough Acts of April 3, 1851, P. L. 320, as construed by the Act of June 9, 1874, P. L. 282, a borough has the power to contract with a railroad company to pay for the repairs of an overhead bridge which the railroad company agrees to construct, and this is the case even though a part of the original crossing may not have been within the borough limits.

Argued September 29, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 86, March T., 1926, by defendant, from judgment of C. P. Allegheny Co., April T., 1924, No. 1098, for plaintiff on case stated, in suit of Pittsburgh & Lake Erie Railroad Co. v. McKees Rocks Borough. Affirmed.

Case stated to determine liability for repairs to a bridge. Before EVANS, SWEARINGEN and CARNAHAN, JJ.

The opinion of the Supreme Court states the facts.

Judgment for plaintiff in opinion by CARNAHAN, J. Defendant appealed.

*Error assigned* was judgment, quoting it.

*William S. Dalzell,* of *Dalzell, Fisher & Dalzell,* with him *E. A. Sefler,* Borough Solicitor, for appellant.—The power to "alter" or "abolish" includes the power to "repair": P. & L. E. R. R. v. P. S. C., 75 Pa. Superior Ct. 282.

The commission having jurisdiction of a given case, and both parties to a contract involving a public facility being before it as parties to the record, if the contract be interposed by one of the parties thereto as a bar to personal liability in the premises, the commission may, in its reasonable discretion, either enforce the terms of the contract, or it may ignore the contract and apportion the expense among the public service companies accord-

ing to "the relative importance to the public of the services rendered by the public service companies concerned."

The decision of the public service commission on the question as to what is a reasonable rate, and of all matters leading up thereto or necessarily involved therein, is conclusive if not appealed from; and, if an appeal is taken, the decision of the Superior Court thereon is conclusive: N. Y. & Pa. Co. v. R. R., 267 Pa. 64; L. & N. E. R. R. v. P. S. C., 277 Pa. 493; N. Y. & Pa. Co. v. R. R., 281 Pa. 257.

That contracts between public service corporations and municipalities may be abrogated under the police power of the sovereign is not now, we submit, open to question: C., B. & Q. R. R. v. Nebraska ex rel. Omaha, 170 U. S. 57; Detroit, etc., R. R. v. Osborn, 189 U. S. 383; Missouri Pacific R. R. v. Omaha, 235 U. S. 121, 127.

The contract was without consideration: Reading v. Traction Co., 202 Pa. 571, 573; Phœnixville v. Iron Co., 45 Pa. 135; P. R. R. v. Boro., 46 Pa. 223; Chester v. R. R. Co., 140 Pa. 275; P. R. R. v. Boro., 85 Pa. 336.

The borough, however, had no authority to vacate the road, because it was a part of a public highway, which had been established prior to the borough's incorporation, and which extended through said borough to points beyond its limits, and only a portion of the road that was attempted to be vacated by said ordinance was within the confines of the borough. In such circumstances, that is, where a public highway does not both begin and end within the confines of a borough, the jurisdiction is in the court of quarter sessions, and not in the borough: Somerset and Stoystown Road, 74 Pa. 61; Palo Alto Road, 160 Pa. 104, 106; Curtis v. R. R., 250 Pa. 480.

The contract was ultra vires as to the borough: Penna. R. R. Case, 213 Pa. 373.

*John J. Heard,* with him *Arthur B. Van Buskirk* and *Reed, Smith, Shaw & McClay,* for appellee.—The rule

of res judicata is clearly inapplicable to the present case: Heisler v. Colliery Co., 274 Pa. 448; Havir's Est., 283 Pa. 292; Tasin v. Bastress, 284 Pa. 47.

When all the provisions of the public service company law are kept in mind and considered together with the Borough Code of 1915, expressly granting power to boroughs to contract with railroads as to the maintenance of bridges replacing grade crossings, it becomes apparent that the intent of the public service law was that the Public Service Commission should, "in the first instance" (Lancaster Co. v. P. S. C., 77 Pa. Superior Ct. 495), determine who should pay the costs of the abolition, repair, or relocation of a grade crossing, and that the parties should then be left free to enforce, as between themselves, any private agreement they might have with respect to the share of expense each should bear.

The view that the Public Service Commission was without power to declare the contract of 1902 invalid is sustained by the decisions of this court, the Superior Court, and the Public Service Commission: Citizens Pass. Ry. v. P. S. C., 271 Pa. 39; Swarthmore Boro. v. P. S. C., 277 Pa. 472; Schuylkill R. Ry. v. P. S. C., 85 Pa. Superior Ct. 259; Director General of Railroads v. Rys., 281 Pa. 309; Norristown v. Reading T. & L. Co., 277 Pa. 459; Warren Borough v. P. S. C., 80 Pa. Superior Ct. 10; Wallace v. P. S. C., 80 Pa. Superior Ct. 60.

There was a consideration for the contract: Railroad v. Ry., 15 Pa. C. C. R. 455.

The contract was not ultra vires as to the borough: Kneedler v. Norristown, 100 Pa. 368; O'Maley v. Boro., 96 Pa. 24.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, November 22, 1926:

The Pittsburgh & Lake Erie R. R. Co. sued the Borough of McKees Rocks on a written contract, under which the former covenanted to construct and the latter agreed to maintain a bridge to carry one of the streets

of the borough across the railroad. This suit was brought to recover the cost of necessary repairs, which, on order of the Public Service Commission, were made and paid for by plaintiff, because of defendant's failure to maintain the bridge. The court below entered judgment for plaintiff, on a case stated, in the amount claimed, and defendant has appealed.

In 1902, there was a dangerous grade crossing over plaintiff's railroad, part of the crossing being within the limits of defendant borough. By ordinance dated April 26, 1902, the borough officers were authorized and directed to enter into a contract with the railroad company. This contract, on which the present suit is based, provides, in brief, for the erection by plaintiff, entirely within the borough limits, of "an overhead bridge," to take the place of the grade crossing, the bridge to be constructed "in a proper and substantial manner, with a double street railway track," the approaches to be furnished by the railroad company; and that, when the improvement should be completed "and accepted by said borough," the latter should "maintain said bridge or passageway thereafter."

The case stated shows that, pursuant "to the terms of the contract aforesaid, the railroad purchased the necessary land for approaches......and constructed the bridge, [which] was duly accepted by the borough and became and continued to be a public highway." In acquiring the land and constructing the bridge the railroad expended approximately $165,000.

By ordinance approved February 6, 1903, the borough, in consideration of the payment to it of $5,000, gave a franchise in the car tracks over the elevated crossing to a street railway company. In this ordinance, it was recited that the bridge, then in course of construction, was to become, after its completion, the property of the borough, and to be under its exclusive control as a public highway. The bridge was occupied by the street railway for some time, and remained in general use until

about May, 1920, when, through lack of repair, it became dangerous and was closed to the public.

In April, 1920, several manufacturing corporations, located in the vicinity petitioned the Public Service Commission of Pennsylvania that the borough, the railroad company and the street railway be compelled to place the bridge in proper repair for public use.

On May 14, 1921, the Public Service Commission ordered the railroad company to make all necessary repairs to the bridge, in accordance with certain specifications filed of record in the proceedings; at the same time it assessed the County of Allegheny $12,500, and the borough $5,000, on account of the repairs so ordered and specified. The street railway company, having long since abandoned the use of the crossing, was not assessed for its maintenance.

The repairs thus directed were made by the railroad company at an expense of $30,644.79; the county and the borough each contributed the amounts assessed against them by the commission, leaving a balance of $13,144.79, to recover which this suit was brought against the borough, on its contract of 1902 to maintain the bridge.

The right of the railroad company to make the expenditure in controversy is not questioned, nor is the justice of the amount claimed; the borough's defense is that (1) the decision of the Public Service Commission, fixing the amount which the borough was to pay, is res judicata of its legal obligation in that regard; (2) "the contract of 1902 is void for want of consideration"; (3) "the contract......is ultra vires." There is also a suggestion that the contract is "unenforceable because against public policy," but this last point is not argued in appellant's brief and calls for no discussion here.

On defendant's first point, while we find no principle of law or practice which prevents plaintiff from enforcing the claim in suit, nevertheless we cannot agree with all the reasons given by the court below for excluding

the doctrine of res judicata, particularly the reasons, stated by it, that "the parties were not the same nor is the Public Service Commission a court of record."

As to the parties not being the same, discussing the subject of res judicata, we recently pointed out, in Tasin v. Bastress, 284 Pa. 47, 51, "It is not necessary that exactly the same parties shall appear in both cases; it is sufficient if all those in the later case were parties in the former one." Both plaintiff and defendant in the present action were parties before the commission. True, they were codefendants there, but a judgment may be res judicata as between coparties if they asserted adverse interests in the former proceeding (Hertzel v. Weber, 283 Fed. 921, 929; Renfro v. Hanon, 297 Ill. 353, 130 N. E. 740, 742; 34 C. J. 1040) ; and we are of opinion that the parties here concerned were sufficiently adverse, when before the commission, to satisfy the requirements of the doctrine under discussion in this regard.

As to the Public Service Commission not being a court of record, that is an insufficient reason for denying the application of res judicata: Marsteller v. Marsteller, 132 Pa. 517, 523. Judgments of justices of the peace, unappealed from, are res judicata of matters within their jurisdiction (Marsteller v. Marsteller, supra; Gilboy v. Duryea Boro., 228 Pa. 252, 258-9), and the judicial and quasi-judicial acts of public officers and boards, acting within their jurisdictions, have on many occasions been held to fall within the doctrine: Dennison v. Payne, 293 Fed. 333, 341; People v. Hall, 80 N. Y. 117, 126, 127; Longinette v. Shelton (Tenn.), 52 S. W. 1078, 1084, 1085; Conn., etc., R. R. Co. v. Bailey, 24 Vt. 465, 58 Am. Dec. 181, 186; 24 Am. & Eng. Encyc. Law 723 (2d ed.) ; 34 C. J. 759. It is unnecessary, however, to decide at this time whether an award such as the one at bar could operate as res judicata on the principle of the above cases, since, in this instance, the Public Service Commission had no authority, nor did it attempt, to adjudi-

cate the claim here sought to be enforced, as we shall now show.

The facts involved, having been reduced to a case stated, are undisputed, so there is not properly before us any question as to whether they are fixed by a prior judgment or an order in the nature of a judgment. Appellant's contentions are that the order of the commission, directing payment, by plaintiff railroad company, defendant borough and the County of Allegheny, of the expense of the repairs to the bridge, is so determinative of the amount it is to pay on that account as to render its legal obligation in this respect res judicata in all subsequent judicial proceedings other than an appeal from the order itself, and that the railroad company, having failed to take such an appeal and having accepted from the county and borough the amounts named by the commission, is bound by such order, since it supersedes the terms of the contract in suit. These contentions assume that the Public Service Commission is vested with power to set aside the contract between the borough and the railroad company and that its order had this effect; but we cannot agree with either position.

Assuming, but not deciding, that the legislature has the constitutional right to authorize the Public Service Commission to revise a contract such as the one here involved, the question is, has any authority of that kind been given? Following decisions previously rendered by this court, some of which are hereinafter mentioned, we decide now that the commission has had no such power conferred upon it. Defendant calls attention to various sections of the Public Service Company Law (Act of July 26, 1913, P. L. 1372); none of these, however, can properly be construed as authorizing the commission, expressly or in effect, to set aside a contract like the one at bar, executed in 1902, long before the enactment of the statute in question, and which does not affect the common welfare by directly influencing the rates or actual operation of a public utility.

As shown by P. & L. E. R. R. Co. v. Pub. Serv. Com., 75 Pa. Superior Ct. 282, 288-9, the commission has power to require those immediately concerned to maintain an existing elevated crossing, or bridge, and to contribute toward the cost of such maintenance in the manner and proportions ordered by that body; but, accepting this decision at its full value, it does not control the present case. The Superior Court did not there decide, as appellant seems to think, that, after an order of the commission assessing such contributions is obeyed, an agreement as to the cost of maintenance, entered into by certain of the parties concerned prior to the enactment of the Public Service Company Law, cannot be enforced in a suit at law between those parties, much less that such a contract can be abrogated by order of the commission. On the contrary, the part of the Public Service Company Law particularly cited by the Superior Court in the P. & L. E. R. R. Case (article V, section 12), states that the commission shall have power to "determine, order and prescribe the terms and conditions of . . . . . .maintenance and protection of all such crossings which may now. . . . . .be constructed, including the stationing of watchmen thereat," etc.; and in Dir. Gen. v. West Penn Rys. Co., 281 Pa. 309, we recently ruled that, notwithstanding an order of the commission requiring a railroad company to "provide a watchman" at a certain crossing, a prior agreement between the railroad company and the defendant railways company, the parties there concerned, to share such expense, was not superseded by the order of the commission, and could be recovered upon.

Though, in the case last mentioned, the contract was not called to the attention of the commission, and for this reason we said that body could not have intended to abrogate it, yet we also based our decision on the broader ground that the agreement in question did not affect "the service or charges to be rendered [to or demanded of] the public," saying, in this connection, "The

right to annul contracts is limited to the police power, and unless it appears the contract does in some measure affect adversely the welfare of the public, the legislature cannot interfere merely to relieve a party from the burdens of an improvident contract," citing Arkansas Nat. Gas Co. v. Ark. Com., 261 U. S. 379, and Swarthmore Boro. v. Pub. Serv. Com., 277 Pa. 472. For a discussion of the subject of the limitation on the commission's power to revise contracts, see also Citizens Pass. Ry. Co. v. Pub. Serv. Com., 271 Pa. 39, 54-6.

Although the opinion from which we last quote has to do with a contract for sharing the expense of a watchman at a crossing, the provision of the Public Service Company Law there involved is the same one now relied on by appellant, and this part of the statute covers "maintenance" of crossings as well as the "stationing of watchmen thereat"; hence what is referred to above as the broader principle on which the decision in the West Penn Railways Case rests is relevant here, and, thereunder, the Public Service Commission could not relieve defendant from its contractual obligations. Moreover, we cannot agree that the commission attempted to afford defendant any such relief; or, to quote appellant's words, that the record shows the "commission, with full knowledge and after due consideration [of] the contract...... exercised its discretion, [and therefore] said contract is ipso facto abrogated." The report of the commission fails to warrant this construction; it simply states the conclusion of law, that the contract does not prevent the Public Service Commission from assessing on the parties concerned "such just and proper portions of the cost of maintenance......as the commission may determine." This means only that, so far as the public interests are involved in the maintenance of the bridge in good order and repair, the contract cannot prevent the commission, in the first instance, from assessing the cost of such maintenance in the manner and proportions which to it may seem best; the report

contains no ruling or attempt to rule that, after the parties concerned have responded to the order of the commission, they are debarred from enforcing the contract between themselves.

Notwithstanding the report of the Public Service Commission and its omission of any attempt to deal with defendant's contractual liability, the latter treats the present case as though the commission possessed power to revise the contract which gave rise to such liability and had exercised its authority in this respect; and, under the heading of res judicata, it claims the benefit of the well established rule that, where a tribunal, competent to hear and determine a cause, has passed on any point of fact or law, one aggrieved by the decision must, if an appeal or other statutory relief is provided, pursue such remedy. But, as already shown, defendant's contractual obligation to maintain the bridge over plaintiff's railroad did not enter into or influence the rulings or award of the commission, hence there was no necessity for an appeal to protect plaintiff's right to enforce that obligation. The rule relied on by defendant is irrelevant to the present case and neither it nor the doctrine of res judicata in its strict sense affects plaintiff's right of recovery.

We shall now pass to a brief consideration of appellant's other defenses, enumerated in the eighth paragraph of the present opinion, as raised on this appeal.

The contention that the contract of 1902 is void for want of consideration cannot be sustained. The consideration set forth in a writing is not always the exclusive or controlling one: see Piper v. Queeney, 282 Pa. 135, 142, and authorities there cited. While the railroad company was legally obliged to keep the original grade crossing in repair, yet, in 1902, it was under no obligation to erect a bridge over such grade crossing. It appears in the case stated that this crossing was a much-used one at the date in question and as traffic increased it would have become more and more dangerous;

hence it was undoubtedly for the benefit of the public that it should be abolished and an elevated crossing substituted in its place. This was done under the contract before us, and, further, in order to permit the borough to accommodate the street railway company (from whom the borough received $5,000 in cash and an undertaking to pay for the maintenance of the bridge, which obligation was adhered to for some years), plaintiff company constructed a much more substantial bridge than would have been necessary to care for ordinary traffic. Then, also, plaintiff was obliged to purchase land for the approaches to the bridge. On this state of facts, it cannot be held that the contract lacked consideration.

As to defendant's ultra-vires contention, the contract to abolish the grade crossing was undoubtedly for the benefit of the borough and its inhabitants, even though part of the original crossing may not have been within the municipal bounds. The Borough Act of April 3, 1851, P. L. 320, chapter II, section 2, confers on these municipal bodies the broad right to pass such ordinances "as they shall deem necessary......for the government of the borough," and subsequent sections confer powers over roads and streets,—powers which, in connection with the general police power provided for by section 2, have been liberally construed to go beyond the mere regulation of public order: see Boro. of Millerstown v. Bell, 123 Pa. 151, 154, and Boro. of Ridley Park v. Citizens' Co., 9 Pa. Superior Ct. 615, 619. The original grade crossing was in the bed of a street or highway passing through defendant's corporate limits; after this crossing was replaced by the bridge, entirely within the municipal limits, the latter "became a part of" the borough's system of streets (Pennsylvania R. R. Co. v. Greensburg, etc., Ry. Co., 176 Pa. 559, 575), and, under the Act of May 24, 1901, P. L. 299, section 1, boroughs have wide jurisdiction to manage and control their roads and streets. Finally, the Act of June 9, 1874, P. L. 282, has a proviso which contains what may properly

be taken as a legislative construction of powers pre-
viously conferred on boroughs, to the effect that, in 1874,
they possessed the legal right (since then expressly con-
ferred on them by the Acts of May 25, 1907, P. L. 240,
241, and of May 14, 1915, P. L. 312, 367) to enter into
obligations such as the one here sought to be enforced.
The Act of 1874 states, "that nothing in this proviso con-
tained shall affect any contract made, or hereafter to be
made, with any railroad company [for] apportioning the
expenses of altering and adjusting the grades of existing
railroads and intersecting streets in any..... borough,
so as to dispense with grade crossings." The contract at
bar is of the character thus described; it provides a
method adopted by defendant borough and plaintiff rail-
road for dividing or apportioning the expense of abolish-
ing a grade crossing. At this day and under the circum-
stances of this case, we shall not depart from the legis-
lative view, indicated in 1874, that boroughs possessed
the legal right to make such contracts. On many occa-
sions between 1874 and the date of the first statute which
specifically provided for borough contracts to abolish
grade crossings, these municipal bodies, throughout the
state, acted, like defendant, on the theory that they,
under their general powers, already possessed the right
to enter into such contracts; this is the view of law ex-
pressed by the legislature itself,—the source of all mu-
nicipal powers,—and we have been shown no reason or
authority which moves us to depart from it in the pres-
ent instance. The only case in this court touching on the
point of law now under discussion, which our own re-
search has disclosed, is South Waverly Borough's App.,
20 W. N. C. 209, 210, 211, 213, where, despite a sugges-
tion that the contract there involved was invalid, we
refused so to rule; in point of fact, in that case, we sus-
tained the dismissal of a bill in equity which asked that
the court take control of the situation covered by the
contract, and remitted the borough to its rights at law
under that instrument.

The judgment is affirmed.