# Reeser, Appellant, v. Philadelphia & Reading Railway Company.

*Railroads—Sidings—Contracts.*

The owners of mills and factories have a statutory right in Pennsylvania to connect their private sidings with the railroads in their vicinity, and they cannot be deprived of this right by an agreement between a railroad company and a landowner that no other switch or siding shall be made in a particular locality, except that upon the land of the owner in question.

Argued Feb. 28, 1906. Appeal, No. 18 Jan. T., 1906, by plaintiffs, from decree of C. P. Berks Co., Equity Docket, 1904, No. 866, dismissing bill in equity in case of J. Pearson Reeser and George O. Reeser v. Philadelphia & Reading Railway Company and William F. Krick. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an injunction.

From the record it appeared that the defendants, the Philadelphia & Reading Railway Company and William F. Krick, proposed to construct a switch and siding on Krick's land so as to connect with buildings in which Krick was engaged in the coal, feed and grain business. The plaintiffs were successors in title to one George Ruth who on June 23, 1854, conveyed certain land to the Lebanon Valley Railroad Company in consideration, inter alia, of the following covenant:

"The Lebanon Valley Railroad Company covenant and agree to pay the damages as above stipulated, and also to make a switch and siding upon the land of the said George Ruth, and that the depot for Sinking Spring shall be upon the land of George Ruth, and that no other depot shall be erected at Sinking Spring; or switch, excepting the said switch shall be necessary for the accommodation of the said Company."

Plaintiffs claimed that by reason or their agreement no sidings could be constructed upon Krick's land.

ERMENTROUT, P. J., filed an opinion which was in part as follows:

Under the statutes and decisions, the defendant, Krick,

cannot be deprived of the siding proposed to be constructed. The Act of February 19, 1849, section 18, P. L. 79, provides: "That upon the completion of any railroad authorized as aforesaid, the same shall be esteemed a public highway for the conveyance of passengers and the transportation of freight, subject to such rules and regulations in relation to the same . . . . as the president and managers may prescribe and direct." It is a right recognized by different acts of assembly, in force when the agreement was made. We refer to the following: Act of April 16, 1838, sec. 11, P. L. 462:

"No person shall construct any building, wharf, platform, switch, sideway, lateral railroad or crossing place, or make or apply any device whatever on the grounds set apart for, or belonging to, or forming part of, or on the banks or excavation of any railroad as aforesaid, without permission being given under the authority of . . . . the managers of the proper railroad company . . . . provided, that nothing in this act shall prevent any corporation authorized to make a railroad, or individual owning land contiguous to a railroad, from laying rails on his or their land and connecting the same with such railroad, in such manner as shall be directed by the managers thereof."

Act of March 28, 1840, P. L. 196: "That the several provisions of the act entitled, 'An act regulating lateral railroads,' passed May 5, 1832, shall extend to . . . . the owner or owners of land, mills, quarries, coal or other mines, lime kilns or other real estate in the vicinity of any railroad, canal or slackwater navigation made or to be made hereafter by any company, individuals or by the State of Pennsylvania; provided, that if the parties interested cannot agree upon the mode, manner or point of connection with such railroad, canal or slackwater navigation, the same shall be determined by the jury to be appointed by virtue of the provisions of the first section of the act to which this is a supplement."

The Act of May 5, 1832, referred to, gives authority to the owners of land, mills, etc., in the vicinity of any railroad, etc., and not more than three miles distant therefrom, to make a railroad thereto over any intervening lands.

The Act of March 13, 1847, P. L. 337, makes it lawful in all cases where two railroads are or shall be constructed by

the company owning either of the railoads to run its cars and locomotives upon the other railroad, " provided, that nothing herein contained shall be construed or interpreted to release or exonerate any company owning a railroad from the obligation and duty which may be now imposed by existing laws of transporting, subject to the rules and regulations of said companies, by locomotive steam engines, the cars, whether loaded or empty, of all persons and companies who may require such transportation over and along so much and such parts of their railroad as locomotive steam engines shall be run upon, whether they be run by the company owning the road, or by any other company."

Our Supreme Court, having in view the general duties of the railroad companies and the rights of the citizen, say: "It is conceded that, under our acts of assembly, the owners of mills and manufactories may of right connect their private sidings with the railroads in their vicinity: " Pittsburg and Lake Erie R. R. Co. v. Robinson, 95 Pa. 426.

The plaintiff cannot, therefore, ask a court of equity to enjoin Mr. Krick from carrying out his rights under the law, and the company is not in a position to refuse what the law allows him.

The granting to defendant company " of a right to construct a railroad carries with it, by necessary implication, the right to construct all works and appendages usual in the convenient operation of a railroad. Sidings are among such works. The right of running sidings to such private establishment, and of taking the necessary land for the purpose, is clearly within the constitutional power of the legislature to confer, because the public interest is thereby subserved by reason of the increased facilities afforded for developing the resources of the State and promoting the general wealth and prosperity of the community: " Getz's App., 10 W. N. C. 453.

It is inconsistent with its duties to the public and against the policy of the law for the railroad company to agree with a private individual to restrict its facilities for accommodating those who have occasion to use its road: Lynn v. Mount Savage Iron Co., 34 Maryland, 603.

But even if this principle were not correct, the right of the landowner, when desirable and necessary, to have a siding

constructed from his land to the railroad, is well recognized, and private contracts not to permit a siding must necessarily yield. Certainly no court of equity ought to be asked to enforce such private contract against an individual.

The agreement also expressly permits the construction of any siding or switch necessary for the accommodation of the company. It is immaterial whether it will, at the same time, accommodate any of its patrons.

The word " accommodation " means convenience; the word " necessary " does not mean absolutely requisite. The necessity must be held to be reasonable and not an absolute one. This interpretation is consistent with the decisions.

In Harvey v. Lloyd, 3 Barr, 331, discussing the meaning of the words " necessary and useful for public or private purposes," in the Lateral Railroad Act of 1832, it was held that the terms " necessary and useful for public or private purposes " are to receive a reasonable construction.

" That the necessity contemplated by the statute is only such as is found in giving a reasonable facility for reaching the public improvements; that the law intended to secure to owners of mines within the prescribed distance, upon paying the assessed damages to intervening owners, such reasonable facilities for reaching the public improvements, as would enable them to bring the mineral wealth to market. . . . The courts have uniformly given this construction to a similar phraseology in the general road laws, and by all of them it has never been supposed that any absolute necessity was intended; that if the convenience of the public, and the facilities of general travel would be increased, the road was always deemed necessary." This case was followed in the case of Hays v. Briggs, District Court of Allegheny County, 3 Pittsburg, 504.*

A similar interpretation was placed upon these words in Chalcraft v. Louisville, Evansville and St. Louis Railroad Co., 113 Illinois, 86, where " the word ' necessary ' in the statute requiring railroad corporations to construct farm crossings ' when and where the same may become necessary for the use of the proprietors of the lands adjoining such railroad,' was used in its more popular sense, and is equivalent to the words ' reasonably convenient.' "

---

* See also Com. ex rel v. Gilligan, 195 Pa. 504.    Reporter.

The agreement in question must be interpreted by the application of these principles to it. No doubt the company could continue to do as it had heretofore done, and in a measure supply some of the wants of its patrons, even though the shifting and removal of cars and the standing of cars may interfere with the quickness of shipment and the facilities of service to its patrons, but it is clear from all the testimony that the construction of the new siding is reasonably necessary in order that it may afford to all of its patrons those reasonable facilities for prompt and ready shipments and service that all railroad companies ought to give their patrons.

The prothonotary is directed to enter the following decree nisi:

And now, to wit: February 6, 1905, this cause came on further to be heard, whereupon it is ordered, adjudged and decreed that the bill be dismissed and that the plaintiffs pay the costs.

*Error assigned* was decree dismissing the bill.

*Henry Maltzberger* and *H. R. Green*, of *Green & Green*, for appellants.

*Snyder & Zieber*, for the Philadelphia & Reading Ry. Co.

*George W. Wagner*, for William F. Krick.

PER CURIAM, May 7, 1906:

The learned judge below found that the agreement with Ruth was valid as to him and binding on the Philadelphia & Reading Railroad Company as the successor of the Lebanon Valley Railroad Company, the original party. But he also found that Krick, the other defendant, as an adjoining landowner, had a statutory right to connect with the railroad by a switch or siding of which he could not be deprived by any agreement of the railroad with a third party.

The judgment is affirmed on so much of his opinion as covers this branch of the case.