Wilkes-Barre Railway Corporation, Appellant, *v.* Public Service Commission et al.

Argued September 30, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

364

*S. W. Rhoads,* for appellant.

*Harry H. Frank,* with him *John C. Kelley, Samuel Graff Miller* and *Richard J. Beamish,* for appellee.

*R. Lawrence Coughlin,* for intervening appellee.

OPINION BY PARKER, J., December 17, 1936:

In this appeal from an order of the Public Service Commission the question involved is whether the commission had the power to place any part of the cost of replacing a portion of a county bridge on a street railway company which has been using and intends to use the bridge by virtue of a private contract with the county.

The Delaware, Lackawanna & Western Railroad Company filed a complaint with the commission alleging the unsafe condition of that portion of the Carey Avenue Bridge owned by Luzerne County which crosses the tracks of the complainant above grade and praying for an order for repairs and reinforcement of the bridge. The bridge spans the tracks of the complainant and the Susquehanna River between Plymouth Borough and Hanover Township. Several of the municipal sub-divisions of the county, the Department of Highways, and Wilkes-Barre Railway Corporation were added as respondents.

All the parties involved agreed that the bridge should

be replaced and the commission directed that the work be done by the county and that the allocation of costs should be deferred until further hearing. After such hearing a supplemental order was issued placing $1,500 on the Wilkes-Barre Railway Corporation, $15,000 on the Department of Highways, $5,000 on the Delaware, Lackawanna & Western Railroad Company, and directing that land damages should be paid by the Borough of Plymouth, leaving the balance to be borne by the County of Luzerne. The street railway company has appealed.

The bridge was erected by Plymouth Bridge Company and operated as a toll bridge, part of it being used from the time of its completion to the present time by Plymouth Street Railway Company and its lessees, including the appellant. The bridge has been open to public travel as a free county bridge since September 5, 1925. Proceedings were begun on November 10, 1922, under the provisions of the Act of May 5, 1911, P. L. 109, to have the bridge taken over by the county and made a free bridge. This resulted in an offer by the owners of the bridge to sell it to the county for a cash consideration subject to the rights of the Plymouth Street Railway Company to use the bridge for an annual consideration. The offer was accepted by the county when the bridge company and the street railway company on April 16, 1923, by separate deeds, conveyed the bridge to the county. The bridge company conveyed subject to the rights of the street railway company and the street railway company conveyed its rights, reserving, however, the right for itself, "its successors, lessees and assigns, to operate, maintain and renew its tracks, wires and appurtenances, and operate cars thereon, as the same are at present located" upon the bridge. It also reserved the right to use the bridge "or any bridges, trestles or structures built in substitution thereof, as the same have been

heretofore used by the said Plymouth Street Railway and its lessees." The county covenanted to maintain, repair and renew the bridge, except the ties, rails, wires and supports of the street railway. In return the street railway company was to pay to the County of Luzerne $125 per month for the use of the bridge. The contracts between the county and the bridge company and the street railway company were not approved by the commission.

The commission and the intervening appellees rely upon the Public Service Company Law of 1913 for authority to act in the premises and particularly for power to allocate a portion of the costs of the improvement on the street railway company, while the appellant relies upon the Act of 1911 under which proceedings were begun to make the bridge a county bridge, insisting that the Act of 1913 did not by implication repeal §2 of the Act of 1911. We all agree with the conclusion of the commission.

By Art. V, §12 of the Public Service Company Law of July 26, 1913, P. L. 1374, as amended by Act of July 17, 1917, P. L. 1025 (66 PS 571-575) it was provided that the commission should have "exclusive power to determine, order, and prescribe, in accordance with plans and specifications to be approved by it, the just and reasonable manner, including the particular point of crossing ...... in which any public highway may be constructed across the tracks or other facilities of any railroad corporation or street railway corporation at grade, or above or below grade." It was also given the same power "to order any crossing aforesaid, now existing or hereafter constructed at grade, or at the same or different levels, to be relocated or altered, or to be abolished". It further provided that "the expense of the said construction, relocation, alteration or abolition of any such crossing, shall be borne and paid, as hereinafter provided, by the public service company or

companies or municipal corporations concerned, or by the Commonwealth, either severally or in such proper proportions as the commission may, after due notice and hearing, in due course, determine, unless the said proportions are mutually agreed upon and paid by those interested as aforesaid". The end, intent and purpose of that portion of the act was declared to be "that accidents may be prevented and the safety of the public promoted". By Art. III, §11, it was provided that "No contract or agreement between any public service company and any municipal corporation shall be valid unless approved by the commission". (66 PS 291)

In the case of *Pittsburgh & L. E. R. R. Co. v. P. S. C.*, 75 Pa. Superior Ct. 282, we said that the Public Service Company Act gave the power to the commission to alter or abolish any crossing, which included the power to order one to be repaired and permitted the costs to be allocated among the public service company or companies and municipal corporations concerned and the commonwealth. Also see *Paradise Township v. P. S. C.*, 75 Pa. Superior Ct. 208, and *Schuylkill County v. P. S. C.*, 77 Pa. Superior Ct. 504. Since the street railway company is a public service company immediately concerned in the crossing and the use of the bridge, it is liable under the terms of the act for a proper share of the cost of the improvement.

Even though we assume that the agreement between the county and the street railway company whereby the county was required to replace the bridge was valid when made, the street railway company or its assigns or successors would not be relieved from liability for a share of the cost imposed by the commission on it in this proceeding involving an alteration or change in a grade crossing. The provisions in the Public Service Company Law with relation to grade crossings were enacted by virtue of the police power of the state and such contracts as we are considering are held to have

been made subject to the implied condition that the lawful exercise of the police power might take place any time and the parties concerned be required to pay their proper share: *Pittsburgh & L. E. R. R. Co. v. P. S. C.*, supra, p. 289-290; *Denver & R. G. R. Co. v. Denver*, 250 U. S. 241, 39 S. Ct. 450; *Northern Pac. Ry. Co. v. Puget Sound & W. H. Ry. Co.*, 250 U. S. 332, 39 S. Ct. 474. The principle that the police power exercised by the public service commission is paramount has been held so broad that contracts made prior to the enactment of that legislation must give way to an exercise of the police power: *Vernon Township v. P. S. C.*, 75 Pa. Superior Ct. 54.

However, we have here a provision in the law which requires the approval of the commission to such agreements and the approval was not given. In *Muscato v. City of Erie*, 304 Pa. 373, 375, 155 A. 744, the Supreme Court said: "His belated contention seems to be that the Public Service Company Law does not apply to cases where, as here, the proceeding relative to the abolition of a grade crossing, had its inception in a contract between a municipality and the utilities affected. Section 11 of Article III of the statute (P. L. 1395) expressly states the contrary. It says that 'No contract or agreement between any public service company and any municipal corporation shall be valid unless approved by the commission.'"

But the appellant contends that the agreement in question was authorized by the Act of May 5, 1911, P. L. 109, that the Public Service Company Act did not specifically repeal that act, and that there is no ground for a repeal by implication. This position is not tenable for several reasons.

By the Act of 1911 the legislature authorized the several counties of this commonwealth to purchase or condemn any public toll bridge crossing any river, rivulet, stream or ravine within the limits of such county

where the same connects different municipal divisions of such county. Proceedings were required to be initiated by petition in the court of quarter sessions of the county. After approval by the court, if the county was unable to agree with the owner of the bridge upon a price, provision was made for condemning the bridge and fixing the amount to be paid the owner as compensation. The act did not provide specifically how payment should be made for the bridge.

When the parties here concerned contracted with relation to the taking of the bridge by the county, they undertook to do more than fix a price for they attempted to determine the responsibility for the cost of reconstructing the bridge and oust the jurisdiction of the commission. The Act of 1911 did not deal with that subject, but prior to the making of the agreement the legislature had given exclusive jurisdiction to the public service commission over matters concerning alterations or changes in crossings such as are here involved and had provided that agreements of all kinds between public service companies and municipalities should not be valid until approved by the public service commission. It is apparent therefore that there was no specific authority given the county to deal with the subject of future controversy with relation to such crossings. Consequently there is no conflict between the two acts of assembly which calls for the application of rules employed when questions of implied repeal arise.

The two acts can stand together; there is no repugnancy or irreconcilable difference between them. Even where two acts of assembly are seemingly repugnant "they must, if possible, have such a construction that one may not be a repeal of the other, unless the one contains negative words, or the intention to repeal is made manifest by some intelligible form of expression": *Brown v. County Commissioners*, 21 Pa. 37, 43. The natural, if not the necessary inference, in all such

cases is that the legislature intended the one to be auxiliary to the other or in aid of the purposes of the other.

Assuming for the sake of argument that a law should be passed requiring all contracts made by the county to have the approval of a county controller, that all county contracts should be in writing, that all actions of county commissioners to be binding should be recorded in writing in the minutes, or that the votes of the members should be recorded in the minutes, certainly it would not be contended that such general laws would be repugnant to the Act of 1911 if still in force. So here the Act of 1911 was not changed; the Public Service Company Act merely imposed general limitations on the county by prescribing how the agents should act.

We find no repugnancy between the two statutes. They could both stand as part of the whole body of the law.

The order of the commission is affirmed.