Pennsylvania Railroad Company, Appellant, *v.* Public Service Commission et al.

Argued April 28, 1937.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

546

*A. M. Donnan,* for appellant.

*John C. Kelley,* with him *Harry H. Frank, Samuel Graff Miller* and *Edward Knuff,* for appellee.

*John E. Evans, Sr.,* of *Pugliese & Evans,* for intervening appellee, submitted a brief.

OPINION BY KELLER, P. J., July 15, 1937:

On December 3, 1935 the Public Service Commission, of its own motion, because of a potential accident hazard existing at certain grade crossings of tracks of the Baltimore & Ohio Railroad Company over tracks of the Pennsylvania Railroad Company near Falls Creek, Clearfield County, entered and issued a rule on said railroad companies to show cause why, inter alia, the said crossings should not be reconstructed and protected in such a manner as to safeguard the traveling public.

After hearing, at which both companies were represented, the commission on September 15, 1936 filed a report and entered an order directing that the crossings recited in the rule be protected by the installation of an interlocked switch and signal mechanism in accordance with the general plan submitted at the hearing of July 9, 1936, as Railroads' Exhibit No. 1, which was approved; and that the said railroad companies, jointly, within 45 days after service of the order, submit to the commission for approval an executed agreement providing for an equitable allocation of the costs and expenses of construction and operation of the said mechanism; and providing further that in the event the new executed agreement was not filed within the time specified, the commission would issue a supplementary order allocating construction and operating costs and expenses. It was further ordered that the work be completed before June 1, 1937 and that any portions or con-

ditions of prior orders of the commission of January 14, 1918 at A. 1737 and of June 24, 1918 at A. 1969, approving an agreement between the railroad companies, dated September 7, 1917, relating inter alia, to the same subject matter, inconsistent therewith be revoked.

No appeal was taken from this order, but no executed agreement between the railroad companies pursuant to its directions, was submitted to the commission.

Thereafter, on December 8, 1936, the commission filed a supplemental report, dated November 30, 1936, finding and determining that the cost of installing and operating an interlocking switch and signal mechanism at these crossings should be divided equally between the two railroads, and entered an order directing the Baltimore & Ohio Railroad Company to construct and maintain the interlocked switch and signal mechanism above referred to and provide qualified signal operators to attend and operate the same constantly, and that the Pennsylvania Railroad Company pay to the Baltimore & Ohio Railroad Company, when and as ordered by the commission, one-half of the actual cost of construction of the switch and signal mechanism and necessary auxiliary appurtenances and buildings, and also pay to the Baltimore & Ohio Railroad Company, monthly and currently, one-half of the wages paid the signal operators and one-half the actual cost of maintaining said switch and signal mechanism. It was further ordered that except where the provisions of an agreement executed between the said railroad companies on September 7, 1917, were inconsistent with the above order, said agreement should serve as the basis for the construction, liability, maintenance and operation of the switch and signal mechanism and appurtenances to be installed at said crossings; and that in all other respects the commission's order of September 15, 1936 should remain in full force and effect.

The Pennsylvania Railroad Company on December

17, 1936 filed its petition asking for a reopening and rehearing of the case, setting forth in effect that the supplementary order of the commission of December 8, 1936 was unjust, unreasonable and confiscatory because it nullified and set aside the provisions of a contract entered into between the railroad companies, dated September 7, 1917, providing for certain additional crossings and for the construction of an interlocked switch and signal mechanism at the crossings in question and for the maintenance and operation of the same, and for the division of the cost of construction, maintenance and operation on a different basis from that fixed by the commission in its order of December 8, 1936, which agreement had been approved by the commission on June 24, 1918. To this petition the Baltimore & Ohio Railroad Company filed an answer opposing the rehearing. The commission on January 4, 1937 entered an order refusing the rehearing. The Pennsylvania Railroad Company appealed and assigned for error, inter alia, the orders of the commission of December 8, 1936 and January 4, 1937.

The agreement of September 7, 1917 (See Record, 133a-150a) related to a number of grade crossings affecting the Pennsylvania Railroad Company, the Western New York and Pennsylvania Railway Company and the Buffalo, Rochester & Pittsburgh Railway Company (now operated by the Baltimore & Ohio Railroad Company), the part affecting the crossings at Falls Creek being contained in pages 134a to 139a. The plans then prepared and submitted relative to the Falls Creek crossings provided for a more elaborate and expensive system than is now necessary, in view of the modern improvements in that field, and would have cost about $90,000; and the cost of construction, maintenance and operation was so allocated as to impose by far the greater proportion—95% of the cost of operation, under present conditions—on the Buffalo, Rochester & Pitts-

burgh Railway Company, now the Baltimore & Ohio Railroad Company. This agreement provided, as one of its terms, "It is hereby understood and agreed that neither the purpose nor intent, nor the obligation of this contract, if and when approved by The Public Service Commission of the Commonwealth of Pennsylvania, is such as to impair or in any wise affect the exercise by said Commission of any of the powers vested in it by the Public Service Company Law, approved July 26, 1913."

The agreement was presented to the Public Service Commission, which, on June 24, 1918, entered its order directing the issuance of a certificate of public convenience "evidencing the commission's approval thereof, in accordance with said petition and plans filed therewith," subject, however, to the condition, inter alia, "That the complete system of protection by signals, derails and interlocking devices, including the tower for operation of the same, be immediately started and completed."

While certain additional crossings were constructed pursuant to said agreement the interlocking switch and signal system provided for therein was never started nor completed. Nothing had been done looking towards its construction when the commission entered its rule on December 3, 1935, over seventeen years thereafter. The commission found that "The Pennsylvania Railroad Company, upon whom the burden of construction of the interlocked switch and signal installation devolved, failed to install the interlocked switch and signal mechanism required by our orders [of June 24, 1918]. No valid or extenuating excuse for this failure was developed at the hearings in the present proceeding."

The railroad companies contended and the commission agreed—that the elaborate and expensive system planned in 1917 was not now necessary; that a satis-

factory system furnishing adequate protection (Railroad's Exhibit No. 1) could be constructed at a cost of about $12,700. From the evidence and the briefs submitted the commission determined that the allocation or division of the cost and expense provided for in the agreement of September 7, 1917 was no longer reasonable or equitable, saying on this point, in their order of September 15, 1936: "We further find that, due to changed conditions, the agreement between The Pennsylvania Railroad Company and the Buffalo, Rochester and Pittsburgh Railway Company with respect to the division of construction and operating costs of the interlocked switch and signal mechanism required in our prior order to be installed at the crossings, is not now acceptable to us as an equitable medium for allocating the costs of installing and operating the protective devices to be installed at these crossings." A resume of the record supporting this finding is contained in the commission's brief, as follows: "The record does, however, at other points, indicate the mode and method of operation of the crossing under the proposed plan. (63a following). The facilities in use at the crossing were fully set forth by witnesses for both railroads; for the Baltimore & Ohio Railroad the testimony of Mr. George H. Dryden, beginning at 63a, and the testimony of Mr. Harry E. Patterson, Train Master of that division, beginning at 95a. Appellant also presented evidence as to the movements of its trains over the crossing by the testimony of the superintendent of its division. (100a). The plan shows the utility and use by both railroads. Each railroad has the same number of tracks involved. On each track there will be substantially the same number of signal devices under the plan. The seniority privileges are the same, the Pennsylvania Railroad Company being the senior company at the low grade crossing, and The Baltimore and Ohio Railroad Company being the senior company at the crossing

of the Ridgway Branch. (108a) The agreement of September 7, 1917, recognized the seniority rights of the Pennsylvania Railroad, and the Commission very properly adopted the other provisions of the original agreement."

As before stated no appeal was taken by appellant from the order of the commission of September 15, 1936. Notice was plainly given to the parties by the report and order of that date that the commission had determined that the division or allocation of the cost of installing and operating the protective devices to be constructed, as provided for in the agreement of September 7, 1917, was no longer approved by it as equitable, and that unless the railroad companies themselves could agree upon a more equitable division or allocation, the commission would make such allocation as it deemed reasonable and equitable. The finding was open to objection and appeal. None was taken.

The positions now taken by the appellant are (1) that the agreement of September 7, 1917 did not have to be submitted to the Public Service Commission for approval; and (2) that having been approved by the commission in 1918 it could not be revoked, changed or modified as respects the allocation of the cost of construction and operation of the mechanism substituted for that originally planned. We disagree with appellant on both positions.

(1) The agreement of September 7, 1917 related to matters which have specifically been committed to the commission. See Art. V, sec. 12 of the Public Service Company Law; *Muscato v. City of Erie*, 304 Pa. 373, 375, 155 A. 744. Since January 1, 1914, no grade crossing can be constructed without the approval of the commission; and this includes approval of mechanical devices to be installed for the protection of the public. The allocation of the cost of such devices and the proportions of the expense to be paid by the several parties,

is also committed to the commission, "unless said proportions are mutually agreed upon and *paid* by those interested as aforesaid." To deprive the commission of jurisdiction in allocating the cost, the proportions must be paid, as well as be agreed upon; that is, the agreement must be actually carried into effect, pursuant to its terms.

(2) The approval of June 24, 1918 was conditioned on the immediate starting and completion of the construction of the safety device and mechanism called for by the plan approved. A delay of seventeen years in starting and completing the mechanism approved may well be viewed as an abandonment of the provisions of the agreement relative to the installation of the safety mechanism and the division of its cost, sufficient, at least, in the circumstances here present, to justify the commission's revocation of its approval of the allocation of cost of construction and operation. The system now to be installed is not the system approved in 1918. The cost of construction is only a fraction—one-seventh —of that contemplated by the parties then. Conditions of traffic and operation have changed,—the whole justifying a re-allocation of the cost by the commission, if the railroads did not mutually agree upon the proportions to be paid by them respectively and actually pay them.

The cases relied upon by appellant: *Pittsburgh & Lake Erie R. Co. v. McKees Rocks,* 287 Pa. 311, 135 A. 227; *Citizens Pass. Ry. Co. v. P. S. C.,* 271 Pa. 39, 54, 56, 114 A. 642; *Director General v. West Penn Rys. Co.,* 281 Pa. 309, 126 A. 767; *Penna. R. Co. v. Penna.-Ohio Electric Co.,* 296 Pa. 40, 145 A. 686; *Swarthmore Boro v. P. S. C.,* 80 Pa. Superior Ct. 99, affirmed 277 Pa. 472, 121 A. 488, all related to contracts made and entered into before the passage and effective date of the Public Service Company Law of July 26, 1913, P. L. 1374. None of the rulings relied on in those cases is appli-

cable to a contract between two public service companies, with reference to a subject matter committed to the Public Service Commission, made after the effective date of the Public Service Company Law. The matter is too clear to require extended discussion. The commission's action is supported by *Wilkes-Barre Rys. Corp. v. P. S. C.*, 124 Pa. Superior Ct. 362, 367, 188 A. 546; *Pittsburgh & L. E. R. Co., v. P. S. C.*, 75 Pa. Superior Ct. 282, 288, 289, and comment on same in 287 Pa. 311, supra, p. 319; *Pittsburgh B. & L. E. R. Co. v. P. S. C.*, 71 Pa. Superior Ct. 15.

The appeal relates to an administrative ruling within the province and authority of the commission. It is not shown to be arbitrary, unreasonable or confiscatory. The commission, in allocating the cost of the new system adopted in 1936 at an estimated cost of $12,700, was not bound to adopt the proportions agreed to by the railroads in 1917, relative to an entirely different system, to be constructed at a cost of $90,000, even though formerly approved by the commission, where such approval was conditional on an immediate starting and completion of the plan and nothing was done under it for 17 years, and in the meantime the commission had revoked its approval, on determining that said proportions were inequitable under present conditions and as applied to the new system.

The appeal is dismissed and the order is affirmed.