Lehigh Navigation Coal Company, Appellant, *v.* Pennsylvania Public Utility Commission et al.

Argued April 26, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*George P. Orlady*, with him *William Jay Turner*, for appellant.

*Herbert S. Levy*, with him *Edward Knuff*, for appellee.

*Robert T. McCracken*, with him *A. Evans Kephart*, for intervenors.

OPINION BY RHODES, J., September 30, 1938:

O'Donnell Brothers, a copartnership engaged in selling coal, lumber, and liquid fuels, instituted before the Public Utility Commission a complaint seeking to compel the Lehigh Navigation Coal Company, respondent, to allow the copartnership the use of a certain railroad sidetrack under the provisions of Article 2, §1(o), of the Public Service Company Law of July 26, 1913, P. L. 1374, 66 PS §103. The sidetrack was one constructed by respondent shortly after April 1, 1932, over property leased by it from other corporations, and connecting the tracks of the Pennsylvania Railroad with the property upon which the copartnership business is conducted. The parties signed an agreement conferring a ten-year license, subject to renewal, upon respondent, and respondent agreed to bear the entire cost of construction and maintenance of the track. Respondent's answer to the complaint averred that the sole purpose

of the construction was the delivery of its anthracite coal to the copartnership. A controversy arose concerning deliveries to the copartnership over the sidetrack of coal not purchased from respondent, with the result that respondent at one time tore up part of the sidetrack, but upon being ordered to replace it, by a decree of the Court of Common Pleas No. 5 of Philadelphia County, affirmed by the Supreme Court (324 Pa. 369), requested the Pennsylvania Railroad to make no deliveries whatever over the sidetrack, pursuant to the railroad's agreement with respondent. The complaint averred that the parties had been unable to agree upon any price to be paid for the requested use of the sidetrack, and respondent's answer admitted that the only attempts at an agreement had been unsuccessful.

Testimony on the issue was heard by an examiner for the commission, and the commission, after making findings of fact as to the origin of the controversy, the cost of construction and physical maintenance of the various sections of the sidetrack, as well as of rentals paid by respondent for the land over which the sidetrack passed, assessed the cost of the use sought by the copartnership in relation to these items, and sustained the complaint.

The parties later filed of record a stipulation to modify the commission's assessment. Respondent has appealed, and complainants have intervened.

The principal contention of appellant is that the proviso in Section 1(o), Art. 2, of the Act of July 26, 1913, P. L. 1374, 66 PS §103, and the proviso in Section 406, Art. 4, of the Act of May 28, 1937, P. L. 1053, 66 PS §1176, are unconstitutional because they violate in two respects Article 3, §3, of the Constitution, which reads as follows: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title." Appellant maintains (1) that they would provide for the

regulation of the construction and use of private property of miners and shippers of anthracite coal; and (2) that there is no notice in the title of either act that such provisions are contained therein.

Section 406, Art. 4, of the Public Utility Law of 1937, 66 PS §1176, is virtually a reenactment of §1(o), Art. 2, of the Public Service Company Law of 1913, 66 PS §103, which was in effect at the time of filing the complaint in this case.

Section 1404, Art. 14, of the Public Utility Law of 1937, 66 PS §1534, provides, inter alia, as follows: "All litigations, hearings, investigations, and other proceedings whatsoever, pending under any act repealed by this act, shall continue and remain in full force and effect, and may be continued and completed under the provisions of this act."

For the purpose of the instant case the proviso under Section 406, Art. 4, of the Public Utility Law of 1937, may be considered as a reenactment of the proviso in Section 1(o), Art. 2, of the Public Service Company Law of 1913. The respective sections containing the provisos are printed in the margin.[1]

---

[1] Section 1(o), Art. 2, of the Act of July 26, 1913, P. L. 1374, 66 PS §103: "If a railroad corporation, upon application of any owner or operator of any lateral railroad, or any private sidetrack, or of any shipper, tendering property or traffic for transportation, or of any consignee, to construct, maintain, and operate, at a reasonable place and upon reasonable terms, a switch connection with any such lateral railroad or private sidetrack which may be constructed to connect with its railroad, where such connection may be reasonably practicable and can be put in with safety, and will furnish sufficient business to justify the construction and maintenance of the same: Provided, That whenever any lateral line of railroad or private sidetrack has been so connected with a line of any railroad, or whenever any owner of such lateral railroad or any private sidetrack has at any time heretofore sold or leased, or shall hereafter sell or lease, such lateral railroad or sidetrack to any railroad corporation, any person or corporation shall be entitled to connect therewith, or to

The other questions raised in appellant's brief will be given consideration before reverting to the main issue. Appellant first urges upon us that the proviso extends the principal grant of authority, and is a nullity.

Section 406, 66 PS §1176, grants to any owner or

use the same, upon payment to the party incurring the primary expense thereof of a reasonable proportion of the cost of the said lateral railroad or private sidetrack, and of the maintenance thereof; which shall be determined, in case of disagreement among the parties, by the commission, after notice to the interested parties, and a hearing. Provided that such connection and use can be made without unreasonable interference with the use thereof by the party incurring the primary expense or owning or leasing said lateral railroad or sidetrack."

Section 406, Art. 4, of the Act of May 28, 1937, P. L. 1053, 66 PS §1176: "Every public utility engaged in a railroad business shall, upon application of any owner or operator of any lateral railroad, or any private sidetrack, or of any shipper tendering property for transportation, or of any consignee, construct, maintain, and operate, at a reasonable place and upon reasonable terms, a switch connection with any such lateral railroad or private sidetrack which may be constructed to connect with its railroad, where such connection may be reasonably practicable and can be put in with safety, and will furnish sufficient business to justify the construction and maintenance of the same: Provided, That whenever any lateral line of railroad or private sidetrack has been so connected with a line of any railroad, or whenever any owner of such lateral railroad or private sidetrack has at any time heretofore sold or leased, or shall hereafter sell or lease, such lateral railroad or sidetrack to any public utility engaged in a railroad business, any person or corporation, including a municipal corporation, shall be entitled to connect therewith, or to use the same upon payment to the party incurring the primary expense thereof of a reasonable proportion of the cost of such lateral railroad or private sidetrack, and of the maintenance thereof, which shall be determined, in case of disagreement among the parties, by the commission, after notice to the interested parties, and a hearing: Provided, That such connection and use can be made without unreasonable interference with the use thereof by the party incurring the primary expense of owning or leasing such lateral railroad or sidetrack."

operator of any lateral railroad, or any private side-track, or any shipper tendering property for transportation, or any consignee, the right to have a switch connection with the line of any railroad under certain conditions. Clearly, the proviso which follows in that section does not enlarge the grant of power which precedes it, but limits the use and enjoyment of such connection when made. If the right is exercised and a switch connection is made, the owner or operator of the sidetrack shall not have an absolute use of it, but such usage shall be subject to the right of others to connect with it and to use it. The proviso qualifies and limits the right granted. See *Montgomery v. Martin et al.,* 294 Pa. 25, 143 A. 505.

Appellant next states that the provisos in those sections are provisions entirely foreign to the subject-matter of the entire acts, and hence nullities. This position has no more substantial basis than the previous one. The sidetrack which appellant built, when connected with the Pennsylvania Railroad, constituted a part of the railroad's transportation facilities in the same manner as if constructed by the railroad company itself. The railroad's right of way and tracks are its private property, but subject to public use. *Pennsylvania Railroad Co. v. Public Service Commission,* 64 Pa. Superior Ct. 586, 589. If some of these facilities constituting its transportation system are privately owned, they are none the less charged with public use, and subject to regulation by the state. Sidetracks are among the works and appendages usual in the convenient operation of a railroad (*Reeser v. Philadelphia & Reading Railway Co.,* 215 Pa. 136, 138, 64 A. 376) ; they are facilities of such utility, even though privately owned; when connected with the line of the railroad company they are an integral part of the railroad system, regardless of ownership, and, as provided by Article 17, §1, of the Constitution of 1874, become pub-

lic highways, and hence subject to regulation as such by the state.

Among the matters which are fairly relative and germane to the regulation of public utilities is the regulation of the facilities of such utilities. The definition of facilities, contained in the Public Utility Law, Art. 1, §2 (10), 66 PS §1102, is as follows: " 'Facilities' means all the plant and equipment of a public utility, including all tangible and intangible real and personal property without limitation, and any and all means and instrumentalities in any manner owned, operated, leased, licensed, used, controlled, furnished, or supplied for, by, or in connection with, the business of any public utility. ......"

Article 1, §1, of the Public Service Company Law, 66 PS §1, provided: "The term 'Facilities,' as used in this act, includes all plant and equipment of a public service company, which includes all tangible real and personal property, buildings, materials, easements, rights of way, rights of trackage, subways, tunnels, railroads, street railways, tracks, canals, and all ...... sidetracks, spurs, turnouts, switches, systems, stations, depots, terminals, terminal facilities, water or gas jet, wells, and any and all other means and instrumentalities in any manner owned, operated, leased, licensed, used, controlled, furnished, or supplied for, by, or in connection with, the business of any public service company. ......"

In *Overlook Development Co. v. Public Service Commission*, 101 Pa. Superior Ct. 217, affirmed 306 Pa. 43, 158 A. 869, it was held under this satutory definition of "facilities" that a privately owned and constructed water main became a facility of a water company the moment the latter connected to use it in/ supplying water to a patron.

We are of the opinion that the sidetrack involved in the instant case was a facility of the railroad com-

pany; that the provisos of Section 1(o) and Section 406 are not foreign to the subject-matter of the acts of which they are a part; that the regulation of such facilities of a utility is germane to the regulation of public utilities as provided by the respective acts.

Appellant's argument that the Public Utility Law contains the general provisions for the regulation of public utilities, and if the proviso in Section 406 is made applicable, as in the instant case, it would provide for the regulation of the construction and use of private property, in violation of Article 3, §3, of the Constitution, has been partially answered. Appellant's argument was likewise directed to the Public Service Company Law, and the proviso in Section 1(o), Art. 2 thereof. Appellant's business of mining and shipping anthracite coal was not the subject of regulation under the provisos; they in no way relate to the regulation of appellant's business or property used for such purpose. But when appellant's property becomes a facility of a public utility, such property becomes subject to regulation not as the private property of appellant as a miner and shipper of anthracite coal, but as part of the railroad company's facilities. Appellant, by its own conduct, clothed its property in question with the character of a utility facility, subject to public use upon the payment of reasonable compensation; it voluntarily made its property a utility facility.

The real question in the case is whether the titles of the Public Service Company Law [2] and the Public

---

[2] "An Act Defining public service companies; and providing for their regulation by prescribing and defining their duties and liabilities; prescribing, defining, and limiting their powers, and regulating their incorporation, and, to a limited extent, regulating municipal corporations engaged or about to engage in the business of public service companies; creating and establishing a Public Service Commission for the regulation aforesaid; prescribing and defining the powers and duties of such Commission and

Utility Law [3] give sufficient notice of the particular ramifications of the subject. Appellant argues that the provisos, requiring a person who builds a private side-

---

its officers, including the exclusive power to regulate the construction, alteration, relocation, or abolition of the crossings of railroad corporations, street railway corporations, or other public service companies, and of public highways by the tracks or other facilities of said companies; providing for the ascertainment by the Commission of the expense and damages resulting from such construction, alteration, relocation, or abolition, and for the payment of such expense and damages, severally or proportionately, by the public service companies interested, the State, or municipal corporation concerned, and giving persons whose property is thereby taken, injured, or destroyed, authority to sue the Commonwealth for damages in such cases; providing for the terms, salaries, and compensation of the members of the commission, its officers, counsel, and employes; prescribing and regulating the practice and procedure before such commission, and upon appeal and judicial review of its orders and determinations by the courts of common pleas; and giving the court of common pleas of Dauphin County exclusive jurisdiction of such appeals in certain cases, and of all injunctions, mandamus, or other appropriate proceedings to enforce the provisions of this act and the orders of the commission, and to restrain such orders, subject to an appeal to the Supreme Court; prescribing penalties, fines, and imprisonment for the violation of the provisions of this act and for the violation of the orders of said commission; making it the duty of the Public Service Commission to enforce the provisions of the act approved the nineteenth day of June, one thousand nine hundred and eleven, entitled 'An act to promote the safety of travelers and employes on railroads, by compelling common carriers by railroad to properly man their trains,' by amending section nine thereof; repealing the act approved the thirty-first day of May, one thousand nine hundred and seven, which provided for the appointment of the Pennsylvania State Railroad Commission; and sections one and two of the act, approved the fourth day of June, one thousand eight hundred and eighty-three, entitled 'An act to enforce the provisions of the seventeenth article of the Constitution, relative to railroads and canals'; and an act, entitled 'To provide the maximum car service charges, including car storage charges, that railroad companies and corporations, or associations, may charge and collect on each car loading, and not

track and secures a switch connection to permit others to connect with such sidetrack or to use it, contravene Article 3, §3, of the Constitution, above quoted. The subject of the two statutes is the regulation of public utilities. The sidetrack in question was a facility of the

---

unloaded within the free time for unloading cars, and fixing the free time that shall be allowed for unloading cars,' approved twenty-fourth day of May, Anno Domini one thousand nine hundred and seven; and the proviso of clause three and the provisos of clause seven of section thirty-four of the act, entitled 'An act to provide for the incorporation and regulation of certain corporations,' approved the twenty-ninth day of April, one thousand eight hundred and seventy-four, and all other legislation inconsistent with or supplied by this act."

---

[3] "An Act Relating to the regulation of public utilities; defining as public utilities certain corporations, companies, associations, and persons; providing for the regulation of public utilities, including, to a limited extent, municipalities engaging in public utility business, by prescribing, defining, and limiting their duties, powers, and liabilities, and regulating the exercise, surrender or abandonment of their powers, privileges, and franchises; defining and regulating contract carriers by motor vehicle and brokers in order to regulate effectively common carriers by motor vehicle; conferring upon the Pennsylvania Public Utility Commission the power and duty of supervising and regulating persons, associations, companies, and corporations, including, to a limited extent, municipal corporations subject to this act, and administering the provisions of this act; authorizing the commission to fix temporary rates; placing the burden of proof on public utilities to sustain their rates and certain other matters; authorizing a permissive or mandatory sliding scale method of regulating rates; providing for the supervision of financial and contractural relations between public utilities and affiliated interests, and supervision and regulation of accounts and securities or obligations issued, assumed, or kept by persons, associations, companies, corporations or municipal corporations subject to this act; conferring upon the commission power to vary, reform, or revise certain contracts; conferring upon the commission the exclusive power to regulate or order the construction, alteration, relocation, protection, or abolition of crossings of facilities of public utilities, and of such facilities by or over public highways, to appropriate prop-

Pennsylvania Railroad Company. It provided access to its lines, and was used by the railroad in connection with its business as a public service company. Having been connected with its lines, the sidetrack formed part of its transportation system. The control of such sidetrack, although privately owned, is therefore a matter of public interest, and included, as we view it, in the subject of regulation of public utilities.

In *Payne et al. v. School District of Coudersport Borough et al.*, 168 Pa. 386, at page 391, 31 A. 1072, at page 1075, our Supreme Court held: "The title to a bill need not be an index to its contents, but it must be so broad as to cover all the provisions of the act, and not merely some of its subdivisions. One of the tests applied in the cases, to determine the sufficiency of a title to a bill, is the inquiry whether it fairly gives notice by its terms, to all persons interested, of the subject-matter of the act." Again, in *Poor District Case (No. 1)*, 329 Pa. 390, at page 399, 197 A. 334, at page 339, our Supreme Court said: "Plurality of subjects is not objectionable so long as they are reasonably germane to each other: *Mallinger v. Pittsburgh*, 316 Pa. 257, 261 [175 A. 525]. . . . . . .

---

erty for the construction or improvement of such crossings, and to award or apportion resultant costs and damages; authorizing owners of such property to sue the Commonwealth for such damages; providing for ejectment proceedings in connection with the appropriation of property for crossings; conferring upon the commission power to control and regulate budgets of public utilities; imposing upon persons, associations, companies, and corporations (except municipal corporations) subject to regulation, the cost of administering this act; prescribing and regulating practice and procedure before the commission and procedure for review by the courts of commission action; giving the court of common pleas of Dauphin County exclusive original jurisdiction over certain proceedings; prescribing penalties, fines, and imprisonment for violations of the provisions of this act and regulations and orders of the commission, and the procedure for enforcing such fines and penalties; and repealing legislation supplied and superseded by or inconsistent with this act."

A title need not be an index or synopsis of an act yet it must not mislead: *Dailey v. Potter County,* 203 Pa. 593 [53 A. 498]. It is enough if it gives such notice of the contents of the act as to put the reader to further inquiry: *Turco Paint & Varnish Co. v. Kalodner,* 320 Pa. 421, 436 [184 A. 37]. . . . . . .

". . . . . . the constitutional provision as to titles was intended to curb 'the vicious practice . . . . . . of incorporating in one bill a variety of distinct and independent subjects of legislation [the real purpose of which] was often and sometimes intentionally disguised by a misleading title or covered by the all-comprehensive phrase, "and for other purposes" with which the title of many "omnibus" bills concluded': *Road in Phoenixville,* 109 Pa. 44, 48; *Sugar Notch Borough,* 192 Pa. 349, 355 [43 A. 985]."

In *Commonwealth v. Stofchek,* 322 Pa. 513, at page 517, 185 A. 840, at page 843, our Supreme Court again stated: "The provision was not intended to exercise a pedantic tyranny over the grammatical efforts of legislators, nor to place them between the horns of a constructional dilemma, namely, that the title of an act must be so general or so particularized as to include all of its subject-matter, and yet not so general as to give no indication of its purpose, nor so particular as to inferentially exclude from its scope any items inadvertently omitted. As stated in *Soldiers and Sailors Memorial Bridge,* 308 Pa. 487 [162 A. 309], citing *Carr v. Aetna A. & L. Co.,* 64 Pa. Superior Ct. 343, at 349, the provision is not applicable 'unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill.' It is intended to operate to exclude from the measure that which is secret and unrelated: *Beckert v. City of Allegheny,* 85 Pa. 191. The history of this section indicates that this is its true purpose."

We are of the opinion that the titles of the acts are

sufficient, and that they indicate a general subject to which the provisions involved are germane. See *James v. Public Service Commission,* 116 Pa. Superior Ct. 577, 177 A. 343; *Knowles' Estate* 295 Pa. 571, 145 A. 797.

In determining the validity of legislative enactments our Supreme Court, in *Reeves et al. v. Philadelphia Suburban Water Co.,* 287 Pa. 376, at page 386, 135 A. 362, at page 365, has stated: "The presumptions,—state of mind as it were,—should favor constitutionality. 'A construction that invalidates an act must, under all circumstances, be rejected for one, supported by reason, which will not conflict with the Constitution; for a court is obliged to resolve every doubt in favor of the validity of legislation, and can never accept as correct a meaning which conflicts with the organic law if such a course can reasonably be avoided': *Com. v. Benn,* 284 Pa. 421, 442 [131 A. 253, 260]. 'When the constitutionality of an act of assembly is attacked, it is the duty of every judge,—without regard to his opinion as to the necessity for the statute, or its wisdom,—to seek a construction which will support the legislative interpretation of the Constitution, and an act can never properly be declared void unless this is found to be impossible': *Com. v. Snyder,* 279 Pa. 234, 239 [123 A. 792, 793]."

Guided by the principles which have been enunciated in the foregoing cases, and others of similar import, we can arrive at no conclusion other than that the titles of the acts do not violate Article 3, §3, of the Constitution for any of the reasons which appellant has assigned.

It follows that the commission had power to make its order under the facts in the instant case notwithstanding the agreement between the parties, dated April 1, 1932, and subsequent to the enactment of the Public Service Company Law of 1913. See *Wilkes-Barre Rail-*

*way Corp. v. Public Service Commission et al.,* 124 Pa. Superior Ct. 362, 188 A. 546; *Pennsylvania Railroad Co. v. Public Service Commission et al.,* 127 Pa. Superior Ct. 544, 193 A. 127.

The order of the commission was in conformity with the law and the facts as shown by the record, and is affirmed, at the cost of appellant.