188 Pa. Superior Ct. 647 (1959)
New York Central Railroad Company, Appellant,
v.
Pennsylvania Public Utility Commission.
Superior Court of Pennsylvania.
Argued December 16, 1958.
March 18, 1959.
Before RHODES, P.J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).
*648 John S. Simpson, with him W.M. Ruddock, Robert M. Fisher, and Fisher, Ruddock & Simpson, for appellant.
Miles Warner, Assistant Counsel, with him Thomas M. Kerrigan, Counsel, for Pennsylvania Public Utility Commission, appellee.
Vincent M. Casey, with him Arnold Smorto, for intervening appellee.
OPINION BY GUNTHER, J., March 18, 1959:
This appeal is from an order of the Public Utility Commission sustaining a complaint of Irvin Stoker, a coal mine operator in Emeigh, Cambria County, Pennsylvania. Irvin Stoker protested the withdrawal of railroad service by New York Central and Hudson River Railroad Company to his coal mine.
Complainant leased the coal mine from Frank Calandra, Inc., which corporation acquired title by conveyance from Cherry Tree Coal Company. Cherry Tree Coal Company operated the said coal mine many years prior to the conveyance.
Shortly after the lease was made Frank Calandra was notified that the side track would be leased and the rails would be submitted to bids for removal. Frank Calandra, Inc., submitted his bid, which, however, was less than the one submitted by another party.
Complainant is now compelled to deliver his coal by truck for a distance of 7 miles to a railroad dock, where it is shipped by a third party over the defendant's railroad.
Frank Calandra, Inc., has since conveyed its title to Emeigh Collieries, Inc., the present lessor, which joins in this protest.
*649 Hearings on the complaint were held and the Public Utility Commission filed its order; Commissioner Houck dissenting.
The record discloses that the agreement entered into between Frank Calandra, Inc., and complainant provided for removal of coal for a period of 10 years; Frank Calandra, Inc., advised the railroad that rail service was necessary, but the railroad refused rail service to either Frank Calandra, Inc., or complainant. Complainant testified that the railroad advised him that there would be no rail service available because it would cost $40,000 to put the track in shape; and that the rails on the siding would not hold modern locomotives. An employe of Frank Calandra, Inc., testified that he inspected the track and estimated the cost of repairs at about $2,000 and not $40,000. This witness based his opinion and estimate on 40 years' experience in dealing with coal mines and railroad sidings.
The railroad company presented testimony as to the condition of the tracks and the cost of repairs. Reasons for refusing service to complainant were numerous, among which appears the contention that the mine was in a deplorable condition; that Frank Calandra would not pay for the rehabilitation; that former owners advised the railroad that they were not going to ship any more coal out of the mine in question; and that investigation of complainant disclosed that he was not a responsible individual because of his difficulties with the United Mine Workers. A witness for the railroad testified that his records showed that Mr. Peale owned the right of way; that the railroad had the right of entry for its track to serve the one particular shipper; and that when Mr. Peale sold the mine for scrap and was not going to use it anymore, there was no necessity for maintaining the tracks.
*650 The Commission, after review of the record, determined that the New York Central Railroad Company should provide rail facilities to complainant to take the place of the facilities unlawfully removed, and ordered the appellant company to furnish all material and do all work necessary to restore rail facilities to the coal mine operated by complainant.
The railroad contends that the Commission was without power to require it to restore the track facilities. The Commission, however, argues that the rights of the parties are governed by section 202 (d) which provides that only upon approval of the Commission, evidenced by its certificate of public convenience first had and obtained, may any public utility dissolve or abandon, in whole or in part, any service, right, power, franchise, or privilege.
The Commission may, on substantial evidence and for cause shown, consent to the abandonment of utility service. There is nothing in the record to indicate that the discontinuance of service was approved by the Commission or any proceeding instituted for such discontinuance. Such approval is required for the convenience of the public. Without this approval any utility could remove its facilities without regard to the public's convenience. The power to restore the status quo following an unauthorized abandonment was approved by numerous decisions of our Appellate Courts. Duquesne Light Company v. Pa. P.U.C., 164 Pa. Superior Ct. 166, 63 A. 2d 466; Wattsburg Telephone Cooperative Association v. Pa. P.U.C., 182 Pa. Superior Ct. 594, 128 A. 2d 160.
A review of the authorities cited by complainant leads us to agree with the Commission's order that the Commission may, on complaint of a party desiring freight service, order the facilities restored at the railroads expense where such facilities were abandoned without Commission approval.
*651 Is the result affected by the fact that complainant did not acquire standing to protest until after abandonment was complete? This question, we believe, is answered by section 1001 of the Public Utility Law which confers standing to complain to the Commission on "any person, corporation, or municipal corporation having an interest in the subject matter, or any public utility concerned." The railroad not only abandoned its facilities without Commission approval, but up to and including the time the complaint was filed, it failed to provide rail service as required by the Act, and it is immaterial whether complainant acquired his leasehold before or after service was abandoned.
The other question involved and raised by appellant is whether the Commission can order a railroad to install tracks upon a private siding. Appellant concedes that its tracks at the point where they serve complainant's mine are on a right of way owned by it. Appellant argues that there are other intervening landowners between those facilities and its main line and that these landowners have power to eject the railroad at any time. Appellant's argument in this respect is answered by the decision in Lehigh Navigation Coal Company v. Pa. P.U.C., 133 Pa. Superior Ct. 67, 1 A. 2d 540. There this Court held that "sidetracks . . . when connected with the line of the railroad company . . . are an integral part of the railroad system, regardless of ownership."
The other questions raised by appellant are likewise without merit. This entire proceeding involves the validity of the railroad discontinuance of an existing service without Commission approval. The question is whether the statutory duties prescribed by the Public Utility Law, under section 202 (d) have been followed by the appellant. We believe they have not and therefore affirm the order of the Commission.
Order is affirmed.
*652 DISSENTING OPINION BY RHODES, P.J.:
I dissent in this case because I think the commission's order is unreasonable. I would return the record to the commission for further consideration of the facts and the application of the proper legal principles.
WRIGHT, J., joins in this dissent.