Commonwealth v. Smithgall

*K. L. Shirk*, district attorney, *William M. Rutter*, Deputy Attorney General, and *Claude T. Reno*, Attorney General, for Commonwealth.

*Bernard M. Zimmerman*, for defendant.

APPEL, J., January 5, 1942.—Defendant moves to quash an indictment against him which charges a violation of section 13 of the Act of July 12, 1919, P. L. 933, being an act to regulate the practice of architecture, as amended by section 4 of the Act of June 27, 1939, P. L. 1188, 63 PS §28.

The indictment charges that defendant during the years 1939 and 1940, at the county aforesaid, and within the jurisdiction of this court, "did unlawfully engage in preparing plans, specifications, and preliminary data and rendering services to clients by preparation of plans, specifications, and data for the erection and alteration of buildings located in the Commonwealth, not having secured from the State Board of Examiners for Architects a certificate of qualification and registration and affidavit card, defendant not being registered and licensed as an architect as required by the laws of this Commonwealth".

Defendant in this case is not a registered and licensed architect within the meaning of the above-recited acts of assembly. It is common knowledge in this community that defendant has, for some years, successfully erected and sold many substantial, convenient, and beautiful dwelling houses, particularly in the various suburban districts of our city. By profession, he has been for many years, and still is, a teacher in the Stevens Industrial School which has his main interest and to this work he devotes most of his time, talent, and energy. The building and selling of houses is not, therefore, his main and primary occupation but may be said to be a supplementary or secondary "side-line". Before the amending Act of June 27, 1939, P. L. 1188, was

passed, he apparently operated under the exemption clause contained in section 13 of the Act of July 12, 1919, P. L. 933, hereinafter recited.

Defendant moves to quash the indictment for the following reasons:

"1. The indictment found hereunder is based upon an alleged violation of the Act of July 12, 1919, P. L. 933, as last amended by the Act of June 27, 1939, P. L. 1188, which amendment is averred to be unconstitutional because

"(a) The title to said amendment fails to give proper notice of the change in status of builders and contractors.

"(b) Said act, as amended, violates the provisions of the Fourteenth Amendment to the Constitution of the United States and of article I, sec. 1, of the Declaration of Rights of the Commonwealth of Pennsylvania.

"(c) Said act, as amended, provides for unlawful distinctions and exceptions in the classes of persons to whom the same is applicable."

Article III, sec. 3, of the Constitution of the Commonwealth of Pennsylvania provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

Section 1 of the Fourteenth Amendment to the Constitution of the United States provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article I, sec. 1, of the Declaration of Rights in the Constitution of the Commonwealth of Pennsylvania

provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

The preamble to the amending Act of June 27, 1939, P. L. 1188, effective upon its final enactment, reads as follows: "An Act to amend the act, approved the twelfth day of July, one thousand nine hundred and nineteen (Pamphlet Laws, nine hundred thirty-three), entitled 'An act to regulate the practice of architecture in the Commonwealth of Pennsylvania by providing for the examination and registration of architects by a State Board of Examiners; defining the power and duties of said board of examiners; and providing penalties for the violation of this act,' as amended, changing limitations upon expenditures by board; revising and changing qualifications for registration; requiring registrants to obtain and use a seal; defining certain terms; requiring certain building plans to be signed by registrants; prohibiting registration of corporations and firms; prohibiting and making certain acts unlawful and increasing penalties."

Section 13 of the Act of July 12, 1919, P. L. 933, as amended by the Act of June 27, 1939, P. L. 1188, for an alleged violation of which defendant is indicted, and which he claims is unconstitutional, provides as follows:

"Section 13. On and after July first, one thousand nine hundred nineteen, it shall be unlawful for any person in the State of Pennsylvania to enter upon the practice of architecture in the State of Pennsylvania, or to hold himself or herself forth as an architect or as a 'registered architect,' or to use any word or any letters or figures indicating or intended to imply that the person using the same is a 'registered architect,' unless he or she has complied with the provisions of this act and is the holder of a certificate of qualification to practice

architecture issued or renewed and registered under the provisions of this act.

"[This act shall not be construed to prevent persons other than architects from filing applications for building permits or obtaining such permits; nor shall it be construed to prevent such persons from designing buildings and supervising their construction, provided their drawings are signed by the authors with their true appellation as engineer or contractor or builder or carpenter, but without the use in any form of the title of architect.]*

"The practice of architecture consists of rendering or offering to render service to clients by consultations, investigation, evaluations, preliminary studies, plans, specifications, contract documents and a coördination of structural factors concerning the aesthetic or structural design and supervision of construction of buildings or any other service in connection with the designing or supervision of construction of buildings located within the boundaries of the Commonwealth, regardless of whether such persons are performing one or all of these duties, or whether they are performed in person or as the directing head of an office or organization performing them.

"An architect, within the meaning of this act, is an individual licensed under the laws of this Commonwealth to practice architecture.

"In order to safeguard life, health and property, no person shall practice architecture in this Commonwealth or engage in preparing plans, specifications or preliminary data for the erection or alteration of any building located within the boundaries of this Commonwealth, except as hereinafter set forth, or use the title 'architect,' or display or use any words, letters, figures,

---

*Note.—"In ascertaining the correct reading, status and interpretation of an amendatory law, the matter inserted within brackets shall be omitted": Statutory Construction Act of May 28, 1937, P. L. 1019, art. V. sec. 71, 46 PS §571.

title, sign, card, advertisement, or other device to indicate that such person practices or offers to practice architecture, or is an architect or is qualified to perform the work of an architect, unless such person shall have secured from the board a certificate of qualification and registration or an affidavit card in the manner herein provided, and shall thereafter comply with the provisions of the laws of the Commonwealth of Pennsylvania governing the registration and licensing of architects.

"Nothing in this act shall be construed to apply to any person while in the regular employment of any railroad, telephone, or telegraph company engaged in interstate commerce; or to any person who is qualified under the law to use the title 'registered professional engineer', but such person may do such architectural work as is incidental to his engineering work; nor shall this act prevent any person who is qualified under the law to use the title 'registered architect' from doing such engineering work as is incidental to his architectural work; or from preventing officers and employes of the Government of the United States, while engaged within this Commonwealth, in the practice of architecture for said Government.

"Nothing in this act shall be construed to prevent any resident of this Commonwealth from making a set of plans or specifications for the occasional or incidental erection or construction of (1) any building or enlargement or alteration thereof intended for occupancy by himself or any person, association or corporation employing him, costing less than $10,000, where the space enclosed does not exceed 30,000 cubic feet calculated by the standards or methods recommended by the American Institute of Architects; (2) any building or enlargement or alteration thereof which is to be used for farm purposes; (3) any single family residence of any size or cost which is to be used by such resident as his home; (4) any remodeling or alteration, regardless of

cost, to existing buildings, not involving structural changes and which do not include additions costing $10,000 or more or containing an enclosed space of greater than 30,000 cubic feet calculated as aforesaid: Provided, That the author of such plans and specifications shall not receive any compensation as the author thereof."

While section 13 above set forth is divided into seven paragraphs, none of these paragraphs is indicated by either numerals or letter. The first paragraph of this section as amended is the same first paragraph in the Act of 1919. The second paragraph is the second paragraph in the Act of 1919 and is now enclosed in brackets which indicate that this paragraph is now repealed and is no longer a part of the law. This paragraph, which exempted certain persons and certain acts from the provisions of the Act of 1919, is now supplied by the exemptions set forth in the sixth and seventh paragraphs of the amending Act of 1939, which are more restrictive, definite, and precise and of a different character than the general exemptions set forth in the corresponding paragraph of the original Act of 1919. The original act did not define the term "practice of architecture" or "architect"—and this deficiency was supplied by the third and fourth paragraphs in the amending act. Under the original act these terms would have been construed to mean such practice and persons as would come within the definition taken from any generally recognized standard dictionary or authority. A casual comparison of the definitions set forth in the act with those taken from the dictionary discloses at once that the definitions in the act are much more broad and comprehensive than the other definitions and will undoubtedly affect more persons and the practices and actions of many more persons than the less comprehensive definitions applicable to the original act.

The fifth paragraph of the amended section is the section of prohibition which, being introduced by the phrase "in order to safeguard life, health and property",

evidences the intention of the legislature to sanction the prohibitions under the police powers inherent in the legislature. The sixth paragraph exempts persons in the regular employment of any railroad, telephone, or telegraph company engaged in interstate commerce, or "registered professional engineers" or "registered architects" in doing engineering or architectural work incidental to their respective professions, or officers and employes of the Government of the United States while engaged within this Commonwealth in the practice of architecture for said Government.

The seventh and last paragraph of section 13 seems capable of being analyzed as follows:

Nothing in this act shall be construed to prevent *any resident of this Commonwealth* from making a set of plans or specifications for

A. The occasional or incidental erection or construction of

1. Any building or enlargement or alteration thereof intended for occupancy by himself or any person employing him which may cost less than $10,000 where the space enclosed does not exceed 30,000 cu. ft.

2. Any building or enlargement or alteration to be used for farm purposes.

3. Any single-family residence of any size or cost to be used by such resident as his home.

4. Any remodeling or alteration, regardless of cost, to existing buildings, not involving structural changes and which do not include additions costing $10,000 or more containing an enclosed space of greater than 30,000 cu. ft.

B. Provided, that the author of such plans and specifications shall not receive any compensation as the author thereof.

C. Cubical contents to be calculated by the standards or methods recommended by the American Institute of Architects.

At the oral argument of this motion it was conceded that the assembly has a constitutional power to reg-

ulate the profession of architects as well as the practice of architecture. This concession follows what the Supreme Court said in Laplacca et ux. v. Philadelphia Rapid Transit Co., 265 Pa. 304, in determining the unconstitutionality of the Attorney's Lien Act of May 6, 1915, P. L. 261, in which Mr. Justice Frazer, speaking for the court, records on page 308:

"It may be conceded that for certain purposes such, for example, as regulation of their rights and duties, members of particular trades, professions or occupations, may be properly classified: Wheeler v. Phila., 77 Pa. 338, 349; Garrett v. Turner, 235 Pa. 383; 12 Corpus Juris 1136, 1137. Such grouping is subject, however, to the qualification that the basis for classification must be reasonable and proper and founded upon a real, and not merely artificial, distinction between the members of the class and the general public, and based upon 'a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others': Ayars' App., 122 Pa. 266, 281, quoted with approval in Com. v. Puder, 261 Pa. 129, 135. The latter case, where the constitutionality of an act regulating the business of loaning money in small amounts was upheld, contains a general discussion of the principles governing the classification of trades or businesses."

Our present judicial inquiry, is, therefore, not into the legislative policy, or the power residing in the legislature, but whether that power has been constitutionally exercised by the legislature. See Commonwealth v. Zasloff, 338 Pa. 457, and Commonwealth v. Puder, 261 Pa. 129.

In our discussion and determination of the present problems we must be guided by the following decisions and acts of assembly.

In the case of Commonwealth v. Zasloff, 338 Pa. 457, where the court held that the Fair Sales Act of July 1,

1937, P. L. 2672, was in violation of article I, sec. 1, of the Declaration of Rights of the State Constitution and the Fourteenth Amendment to the Federal Constitution, on page 460, the Supreme Court said:

"The police power, originally conceived as applying to the health, morals and safety of the people, has been juridically extended to many fields of social and economic welfare. We have become familiar with statutes fixing rates in the case of industries affected with a public interest; neither is there any novelty in legislation aimed to control prices where the object is to prevent monopoly. But in these, as in all cases, the police power is not unrestricted; its exercise, like that of other governmental powers, is subject to constitutional limitations and judicial review, otherwise we would have an absolute instead of a constitutional scheme of government. It has frequently been stated by federal and state courts alike that a law which purports to be an exercise of the police power must not be arbitrary, unreasonable or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the object sought to be attained: [Citing cases]."

In Equitable Loan Society, Inc., et al., v. Bell et al., 339 Pa. 449, a case in which the constitutionality of the Pawnbrokers License Act of April 6, 1937 P. L. 200, was challenged, at page 452, the Supreme Court says:

"In challenging the constitutionality of the Act, plaintiffs are faced with the familiar principle that he who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so, since all presumptions are in favor of its constitutionality, and courts are not to be astute in finding or sustaining objections thereto: *Hadley's Case*, 336 Pa. 100, 104. 'The legislature is the sole judge of the wisdom and expediency of a statute, as well as of the necessity for its enactment, and whether the legislation be wise, expedient or necessary is without impor-

tance to the court in determining its constitutionality. In other words, the assembly has a free hand to legislate on every subject in such manner as it deems proper unless there is a constitutional prohibition clearly expressed or necessarily implied.': *Commonwealth v. Grossman*, 248 Pa. 11, 15."

The Statutory Construction Act of May 28, 1937, P. L. 1019, provides in article IV, sec. 52: "In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions, among others: . . . (3) That the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth." (46 PS §552.)

The rule of statutory construction relating to constitutional matters appears further discussed and decided in Commonwealth ex rel. v. Benn, 284 Pa. 421 (1925), construing The Public Service Company Law of July 26, 1913, P. L. 1374; Reeves et al. v. Philadelphia Suburban Water Company, 287 Pa. 376 (1926); Knowles' Estate, 295 Pa. 571 (1929), construing the "recapture tax" under the Act of May 7, 1927, P. L. 859, supplemental to the Inheritance Tax Act of June 20, 1919, P. L. 521.

Defendant contends that the title to the amending Act of June 27, 1939, P. L. 1188, does not give any notice to a contractor or builder, or persons other than architects, that the exemptions previously afforded to such persons were taken away by the amendment of the Act of 1939 and that such a person was no longer permitted to design buildings and supervise their construction even though such person did not hold himself out to be an architect. It is argued that this failure to mention in the title to the amended act the removal of the previous exemption is fatal and renders that portion of the act unconstitutional by reason thereof.

In support of defendant's contention he cites The Borough of Mount Joy v. The Lancaster, Elizabethtown

and Middletown Turnpike Co., 182 Pa. 581. In this case it appears that the defendant had been incorporated by the Act of March 5, 1804, P. L. 131, to operate a turnpike road from Lancaster to Middletown and extending through to the village of Mount Joy. By the Act of February 10, 1851, P. L. 44, Mount Joy was incorporated as a borough. By the Act of March 24, 1852, P. L. 178, the borough became subject to the general provisions of the General Borough Act of April 3, 1851, P. L. 320. The title of an Act of Assembly of May 24, 1871, P. L. 1096, was "An act entitled 'A supplement to an act erecting the villages of Mount Joy and Richland, and their vicinity, in the county of Lancaster, into a borough, to be called the borough of Mount Joy,' passed the tenth day of February, one thousand eight hundred and fifty one." This act authorized the borough to make the needed repairs of the turnpike within the limits of the said borough and collect the costs thereof from the turnpike company by a method entirely different from that theretofore existing, and contained drastic provisions for the recovery of the cost of such repairs. The Supreme Court held that this title as well as the body of the original act will be searched in vain for any reference to the rights or duties of the defendant corporation (i.e. the turnpike company) or any intimation that they are to be affected in the slightest degree. In holding this Act of 1871 to be unconstitutional .the Supreme Court said at page 584:

"As was said by this Court in Phoenixville Road, 109 Pa. 44, 'While it may be difficult to formulate a rule by which to determine the extent to which the title of a bill must specialize its objects, it may be safely assumed that the title must not only embrace the subject of proposed legislation, but also express the same so clearly and fully as to give notice of the legislative purpose to those who may be specially interested therein. Unless it does this it is useless.'

"The decisions relating to the titles of supplemental legislation do not depart from the foregoing rule. They can be sustained only on the ground that they give notice of the legislative purpose, to those specially interested, by reference to the original act. Accordingly, in Pottstown Borough, 117 Pa. 538, Mr. Justice CLARK said: 'In the case of a supplement, where the subject of the original act is sufficiently expressed in its title, and where the provisions of the supplement are germane to the original, the true rule is that the subject of the supplement is covered by a title which contains a specific reference to the original by its title, and declares it to be a supplement thereto.' "

In Commonwealth ex rel v. Snyder, 279 Pa. 234, a case considering the constitutionality of the Administrative Code, Act of June 7, 1923, P. L. 498, entitled "An act Providing for and reorganizing the conduct of the executive and administrative work of the Commonwealth by the Executive Department thereof . . .", Mr. Chief Justice Moschzisker, speaking for the Supreme Colrt, at page 241, said:

"The act, in order to accomplish this, its real purpose, provides for certain new administrative agencies, the reframing or rearranging of others, and, to that degree, the rebuilding of the structure of the Executive Department. . . .

We hold that the executive department—though, indeed, a comprehensive topic embracing a large field of operation—is a single subject of legislation in the sense that it may be structurally reorganized (but only within the limits of the Constitution) and its administrative work, or executive machinery of government, systematized, in one act of assembly. While the Constitution of Pennsylvania recognizes the 'executive' as having individuality as one of the three departments of government, it also provides that 'No bill . . . shall be passed containing more than one subject, which shall be clearly expressed in its title';

hence matters of substantive law that one would not expect to find under the designation of 'administrative work' (the subject of the present statute) cannot be incorporated in such an act without breaching this constitutional provision; nor can matters, even though administrative, which belong or pertain to the legislative or judicial departments . . . be legally included in an act purporting to deal alone with the latter branch of government." This court says at page 243, "Of course, if in any case the title neither mentions nor reasonably implies that legislation such as that under attack is contained in the act, the provisions brought into question will be held invalid; on the other hand, if so mentioned or implied, they will be treated as part of the main subject of the legislation, unless details in the title, following the designation of the main subject, would mislead one into the belief that no such matters as the provisions in question were likely to be found in the statute."

In Lehigh Navigation Coal Co., v. Pennsylvania Public Utility Commission et al., 133 Pa. Superior Ct. 67, in finding that the titles of the Acts of July 26, 1913, P. L. 1374, and the Act of May 28, 1937, P. L. 1053, are sufficient and indicate a general subject to which the provisions are germane and do not violate article III, sec. 3, of the Constitution, Judge Rhodes, at pages 78 and 79, stated:

"In *Payne et al., v. School District of Coudersport Borough et al.*, 168 Pa. 386, at page 391, 31 A. 1072, at page 1075, our Supreme Court held: 'The title to a bill need not be an index to its contents, but it must be so broad as to cover all the provisions of the act, and not merely some of its subdivisions. One of the tests applied in the cases, to determine the sufficiency of a title to a bill, is the inquiry whether it fairly gives notice by its terms, to all persons interested, of the subject-matter of the act.' Again, in *Poor District Case (No. 1)*, 329 Pa. 390, at page 399, 197 A. 334,

at page 339, our Supreme Court said: 'Plurality of subjects is not objectionable so long as they are reasonably germane to each other: *Mallinger v. Pittsburgh*, 316 Pa. 257, 261 [175 A. 525] . . . . A title need not be an index or synopsis of an act yet it must not mislead: *Dailey v. Potter County*, 203 Pa. 593 [53 A. 498]. It is enough if it gives such notice of the contents of the act as to put the reader to further inquiry: *Turco Paint & Varnish Co. v. Kalodner*, 320 Pa. 421, 436 [184 A. 37]. . . .

'. . . the constitutional provision as to titles was intended to curb "the vicious practice . . . . of incorporating in one bill a variety of distinct and independent subjects of legislation [the real purpose of which] was often and sometimes intentionally disguised by a misleading title or covered by the all-comprehensive phrase, 'and for other purposes' with which the title of many 'omnibus' bills concluded": *Road in Phoenixville*, 109 Pa. 44, 48; *Sugar Notch Borough*, 192 Pa. 349, 355, [43 A. 985].' "

In Commonwealth v. Stofchek, 322 Pa. 513, at page 517, our Supreme Court again stated: "The provision was not intended to exercise a pedantic tyranny over the grammatical efforts of legislators, nor to place them between the horns of a constructional dilemma, namely, that the title of an act must be so general or so particularized as to include all of its subject-matter, and yet not so general as to give no indication of its purpose, nor so particular as to inferentially exclude from its scope any items inadvertently omitted. As stated in *Soldiers and Sailors Memorial Bridge*, 308 Pa. 487, citing *Carr v. Aetna A. & L. Co.*, 64 Pa. Superior Ct. 343, at 349, the provision is not applicable 'unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill.' It is intended to operate to exclude from the measure that which is secret and unrelated: *Beckert v. City of Allegheny*, 85 Pa. 191. The history of this section indicates that this is its true purpose."

In Allentown v. Wagner, 214 Pa. 210, 211 (1906), the title of the Act of March 30, 1903, P. L. 115 (amending the Act of May 23, 1889, P. L. 277), which was "An act amending clause twenty-two of section three of article five . . . of an act entitled 'An act providing for the incorporation and government of cities of the third class,' approved the twenty-third day of May, Anno Domini one thousand eight-hundred and eighty-nine . . .", was challenged on the ground that the act failed to give notice to others than the people of the city that their interest might be affected by the act. The court, in upholding the constitutionality of the amendment, said:

"The act of 1889 is an elaborate and detailed system for the government of cities of the third class. It occupies fifty-five pages of the pamphlet laws, and is divided into nineteen articles covering 145 sections, one of which, section three of article five with which we are now concerned, has forty-seven separate and independent clauses dealing with the municipal powers granted. Any reference to the act, therefore, in subsequent legislation, necessarily carries with it notice of a very extensive range of important subjects which may be involved in the new law." Clause 22 in the original act provided, inter alia, for the erection of certain structures, including hospitals, and the clause as amended provided for the erection and maintenance of a hospital either within the limits of the city or within the county adjacent thereto. Continuing on page 212 the court said:

"Nothing could be more entirely germane to the subject of the original act, and that under all our cases is the test of constitutionality in the title of a supplementary statute . . ."

"There are cases in which the same or similar objections have been held to defeat the statutes: Quinn v. Cumberland Co., 162 Pa. 55; Boro. of Mt. Joy v. Lancaster, etc., Turnpike Co., 182 Pa. 581. But these are

exceptional. In a statute covering so extensive a field, and so many important subjects it is manifestly impossible that the title should give detailed notice to all parties whose interests may be in some manner affected. And even if it did so, very material interests might still be adversely affected without transgressing the rule of prohibition. Thus in the case before us the city of Allentown by building its pesthouse just within its own limits but immediately adjoining a closely built and populous portion of Salisbury township might affect the health and interests of the people of the township far more than by building it in its present location on Lehigh mountain, and yet the city would be clearly within the letter of its statutory rights."

The court in this case quotes from the decision of Chief Justice Agnew in Allegheny County Home's Case, 77 Pa. 77 (p. 213):

" '. . . It will not do therefore to impale the legislation of the state upon the sharp points of criticism, but we must give each title, as it comes before us, a reasonable interpretation ut res magis valeat quam pereat.' In reference to subjects which do not appear by name in the title, it was said In re Sugar Notch Borough, 192 Pa. 349, (356), 'The restrictions of the constitution upon legislation apply to direct legislation, not to the incidental operation of statutes constitutional in themselves upon other subjects than those with which they directly deal.' This is the most specific expression that has yet been evolved, of the general rule as to subjects affected but not directly intended to be legislated upon."

In Bridgewater Borough v. Big Beaver Bridge Co., 210 Pa. 105 (1904), the Act of May 3, 1878, P. L. 41, amending the Act of May 8, 1876, P. L. 131, was challenged on the ground that the amendment took away from the county commissioners the right of approval of viewers and that it failed to give notice thereof in the title. In upholding the constitutionality of the amendment at page 108, the court said:

"The title to the act being the acquisition of bridges for the use of the county, and the abolition of tolls thereon, there was notice in it that counties were to be affected by the proposed legislation. There was, therefore, notice to every board of county commissioners in the commonwealth that they ought to make inquiry into the body of the act; and notice of the proposed amendment to the original act was notice to the county commissioners to look into it."

See Goodwin v. City Council of Bradford, 248 Pa. 453, 457 (1915):

"This language is sufficiently broad and comprehensive to cover all its provisions, . . . and it is therefore unnecessary to set out in detail the contents of the body of the statute. . . . 'It is now well settled that when an act is declared to be a supplement to a former act, if the subject of the original act is sufficiently expressed in its own title, and the provisions of the supplement are germane to that subject, the subject of the supplement is sufficiently covered by a title containing a specific reference to the original by its title with the date of its approval.' The act questioned here is clearly within this rule. The Act of May 11, 1911, P. L. 275, is of general application to all cities and counties. The amending act makes no express provisions for cities of the first class but as the only city of that class is the City of Philadelphia, which is coextensive with the county of Philadelphia, the provision that the commissioners in the counties are to make the appointment would apply to that city."

See Luzerne Water Company v. Toby Creek Water Co., 148 Pa. 568, Stroudsburg Borough v. Shick, 24 Pa. Superior Ct. 442 (1904), and Roads v. Dietz et al., 80 Pa. Superior St. 507 (1923).

The Act of July 12, 1919, P. L. 933, does not contain a definition of the phrase "practice of architecture" or the words "architect." For a definition of architecture we refer to that contained in Webster's New Inter-

national Dictionary defining architecture to be the "Art or science of building; esp., the art of building houses, churches, bridges, and other structures, for the purposes of civil life". In the same dictionary an architect is defined to be "A person skilled in the art of building; a professional student of architecture, or one who makes it his occupation to form plans and designs of, and to draw up specifications for, buildings, and to superintend their execution". A builder is "One who builds or oversees building operations; one whose occupation is to build, as a carpenter, a shipwright, or a mason; specif., one who undertakes the supervision of all the arts and trades involved in building operations". In the practice of civil architecture the builder comes between the architect who designs the work and the artisans who execute it.

The casual comparison of the definition set forth in the act with those taken from the dictionary discloses that the definition in the amended act is more broad and comprehensive than the definition taken from the dictionary and will undoubtedly affect more persons and practices and actions of many more persons than the less comprehensive definition. Moreover, builders, engineers, carpenters, or contractors exempted by the original act (provided they signed plans "with their true appellations" without using in any form the title of "architect") are now made subject to the provisions of the amended section, and are only exempted under certain provisions of the amended act. With the question, however, as to the definition in the act or whether it is a wise, prudent, or advisable definition in this opinion we have nothing to consider. That question is for the legislature: Commonwealth v. Zasloff, 338 Pa. 457; Hadley's Case, 336 Pa. 100; Commonwealth v. Puder, 261 Pa. 129. The question before us is whether the title of the amended act gives sufficient notice to all persons who may be interested and of an inquiring mind that the title definitely covers the subject matter

to be found in the act. It is a matter of common knowledge that all builders and contractors generally in the performance of their work make use of. plans, drawings, and specifications whether they are prepared by themselves or by others and that architects commonly prepare plans and specifications. It, therefore, seems to this court that the title of the act amply gives notice of the subject matter to be found in the various sections of the act. The title of the amending Act of 1939 repeats the entire title of the original Act of 1919 and specifically states that the act as amended is "revising and changing qualifications for registration" (that is, of architects) "requiring registrants to obtain and use a seal; defining certain terms; requiring certain building plans to be signed by registrants" (that is, by architects) ; "prohibiting registration of corporations and firms; prohibiting and making certain acts unlawful and increasing penalties". The phrase "requiring certain building plans to be signed by registrants" should put any person interested generally in building plans or working with building plans, including carpenters, builders, and contractors, and of an inquiring mind to ascertain which certain building plans were to be signed by a registrant, that is, by an architect.

In Hadley's Case, 336 Pa. 100, 106 (1939), "The title is assailed under Article III, section 3, which provides that no bill shall be passed containing more than one subject, which shall be clearly expressed in its title. Here the title is ample to put treasurers of counties of the first class on inquiry into the body of the Act concerning the termination of their agency. We have repeatedly held that the title need only indicate the subject matter of the act and that it need not be a synopsis of it nor index all the subdivisions thereof, nor any matters that may be fairly related to it. Unless a substantive matter, entirely disconnected with the named legislation, is included within the bill, the act does not fall within the constitutional inhibitions: *Com. ex rel. Schnader v. Liveright*, 308 Pa. 35 . . ."

See Mallinger v. Pittsburgh, 316 Pa. 257, Bridgeford v. Groh et ux., 305 Pa. 554, Commonwealth v. Leswing, 135 Pa. Superior Ct. 485, Commonwealth v. Markmann, Jr., 114 Pa. Superior Ct. 29, Commonwealth v. Clymer, 217 Pa. 302 (considering the act regulating the practice of medicine and surgery).

This court is of the opinion that the title to the act regulating the practice of architecture and the amending act gives fair notice to all persons who may perform any of the acts disclosed therein; that the several subjects found in the amended act are germane to the provisions of the original Act of 1919, that the title to the act is not misleading and puts the reader and especially any person interested in the preparation of plans and specifications or in building structures and especially the defendant in this case upon further inquiry to ascertain the subject matter embodied in the act; and that the act does not contain a variety of distinct and independent subjects of legislation, entirely disconnected with each other or any thing secret or unrelated. The title to this amending act does give adequate notice to persons interested as builders and contractors not only of the possibility of changes and revisions being made to the former act, but that such amendments, revisions, or changes are actually being made which as a matter of course change the status of builders and contractors including the defendant in this case. The act, therefore, does not contain more than one subject which is clearly expressed in its title, and therefore is in accordance with the constitutional provision.

We now consider whether section 13 of the Act of 1919 violates the provisions of the Fourteenth Amendment to the Constitution of the United States and of article I, sec. 1, of the Declaration of Rights of the Commonwealth of Pennsylvania as above set forth. It is the contention of defendant that this section of the act attempts to embrace practically the entire field of building activities, when in defining what constitutes

the practice of architecture it embraces "the super-vision of construction of building or any other service in connection with the designing or supervision of con-struction of buildings." In analyzing this contention of defendant we note that he does not deny that the Commonwealth has a right in the exercise of its police power to regulate professions and occupations pro-viding such regulations and the limitations placed upon those engaged or attempting to engage in various pro-fessions and occupations are reasonable, but submits that the provisions of section 13 of the Act of 1939 are beyond the bounds of what may be construed to be reasonable regulations.

In considering this contention it must be remembered that the indictment charges that defendant "did unlaw-fully engage in preparing plans, specifications and pre-liminary data and rendering services to clients by pre-paring all plans, specifications and data for the erection and alteration of buildings located in the Common-wealth," not being registered and licensed as an archi-tect. Section 6 of the Act of June 27, 1939, P. L. 1188, 63 PS §33, provides:

"The provisions of this act are severable, and in the event that any provision thereof should be declared un-constitutional, it is hereby declared that the remaining provisions would have been enacted notwithstanding such judicial determination of the invalidity of any particular provision or provisions in any respect."

In Eisenhart v. Pennsylvania Milk Control Board, 125 Pa. Superior Ct. 483, 485, it was said that " 'a court will never heed objections to the constitutionality of an act of assembly unless the complainants are affected by the particular feature alleged to be in con-flict with the Constitution' " (Citing cases). In this case the constitutionality of the Milk Control Act of January 2, 1934, P. L. 174, was attacked. Eisenhart's license had been revoked under section 10 (d) of the act by the Milk Control Board and a cease and desist order

had been issued against him from which he appealed. He attacked the constitutionality of section 9(a) of the act which deals with the penalties to be imposed on conviction of misdemeanor or violation of the act and the court held he was not in a position to do this for he had not been indicted, nor tried, nor found guilty, nor sentenced for violating any of the provisions of the act.

Commonwealth v. Kennedy, 129 Pa. Superior Ct. 149, was a case where the constitutionality of an ordinance of the City of Easton regulating traffic on certain streets was challenged on the ground that it was an unreasonable exercise of the police power, and that the city could not prohibit the holder of a certificate of public convenience issued by the Public Service Commission from using the streets included within the route designated in the certificate because the ordinance imposed an undue burden on interstate commerce. At page 154 of the opinion of the Superior Court it was said:

"Strictly speaking the appellant is not concerned with the second subdivision of this heading. He was not driving a motor truck, trailer, semi-trailer or commercial motor vehicle engaged in the transportation of goods. He is only concerned with the first subdivision, relating to busses and commercial motor vehicles transporting passengers for pay. It is well settled that one cannot question the constitutionality of a statute—and this includes municipal ordinances—unless injuriously affected by the particular matter alleged to be unconstitutional [citing cases]."

The question as to how the provisions of the act may affect the rendering of services by "contract documents" and "supervision of construction or any other service in connection with the designing or supervision of construction of buildings . . . regardless of whether such persons are performing one or all of these duties," it seems to this court, is not at this time proper for our

consideration. It is conceivable that in a case in which an architect renders service by "contract documents" the matter may involve some question as to the illegal practice of the law and is not a proper subject for legislation regulating the practice of architecture, and, insofar as this act applies to "contract documents," it may be held to be unconstitutional in only that one respect and to be valid in other respects under the severable clause provision of the act. A similar contention, and to the same effect, may be raised under the provision of "supervision of construction of buildings". Possibly the legislative use of the word "or" between the words "designing" and "supervising" should be construed to mean "and" so that the supervision should be in connection with the same structure for which the architect supplied the designing and planning and not to apply to a superintendent of works, the foreman or "boss" of the job, the master carpenter, or any one of the foremen of the almost innumerable subcontractors who perform services and render supplies in and about a building, who may or may not make designs, plans, or specifications for subordinate parts of a structure. The question may arise whether in the case of a subcontractor for mill work, for example, who makes his own detail drawings, when his subcontract is much less than the exemption, but the whole structure is more costly and larger in size than is provided in the exemption, such a subcontractor is subject to the penalties of this act. Neither do we, in this case, have to consider the effect of the constitutionality of the provisions of paragraph 6 of section 13 of this act. A somewhat similar provision was contained in the exemption of section 24 of the Engineer's and Surveyor's Licensing Act of May 25, 1921, P. L. 1131, which the Supreme Court, in the case of Commonwealth ex rel. v. Humphrey et al., 288 Pa. 280 (1927), decided was an unconstitutional provision. This was in addition to the defect that the act provided for the licensing of both

engineers and surveyors. That act did not contain a severable clause and the court decided the whole act to be unconstitutional. The Act of May 6, 1927, P. L. 820, was a new act, and not an amendment to the unconstitutional Act of 1921. The Act of 1927 regulated the practice of the profession of engineering in all its branches including surveying, and contained a severable clause. The constitutionality of the later act has not been attacked. In other words, in the instant case under matters charged in this indictment, the present defendant is only concerned with the constitutionality of the provision of the act so far as the provision of the act relates to the offenses with which he is charged. He cannot attack the constitutionality of this act on the ground that other provisions of said section contain unconstitutional provisions. It is conceivable that other provisions of the act may be decided to be unconstitutional, so far as they relate to persons charged with offenses under some other provision of the act. But this present defendant cannot escape liability for the offense with which he is charged on the ground that other provisions of the act are questionable on the grounds of unconstitutionality. Moreover, it must be remembered that the present defendant is primarily charged with performing some of the services which, in common language, are ordinarily the function of an architect within the purview and regulation of the original Act of 1919. He was exempted from liability under the original act only under the exemption allowed in the Act of 1919. If the quoted exemption had not been a part of the Act of 1919, undoubtedly he would have been liable to prosecution under that act.

From the foregoing reasoning, defendant can not be allowed to challenge the constitutionality of any of the exemption provisions contained in the seventh paragraph of the amended section 13. For example, the exemption involves structures costing $10,000 or more, and in size containing 30,000 cu. ft. Of course,

the cubical contents are mathematically demonstrable. Whether the provision that the calculations of cubical contents shall be made "by the standards or methods recommended by the American Institute of Architects" is subject to the same objection considered by the Supreme Court in the Humphrey case, supra, in its reference to the standards of interstate commerce is not now decided. But this provision does seem to approach the limit of the power of the legislature to provide for such standards which are not a matter of common knowledge and are not easily and readily available. Some objection might be raised to the fluctuating worth of $10,000 calculated in terms of the materials and supplies going into a building. In our opinion both of these provisions approach an unreasonableness verging on unconstitutionality. But suppose we were to strike out these two provisions on the ground of unreasonable restriction, in such case, by the severable or severability clause, the other provisions of the act would remain—and, no matter how little the cost or how small the size of the structure would be, an architect would have to be employed. The mischief in that case would be far greater than that which would be caused by holding these provisions to be constitutionally reasonable.

Section 13 of this act provides that it shall be unlawful for any person in the State of Pennsylvania to enter upon the practice of architecture in the State of Pennsylvania; and the practice of architecture so defined in the act relates to "buildings located within the boundaries of the Commonwealth" and no person shall practice architecture in this Commonwealth or engage in preparing plans, specifications or publishing data for the erection or alteration of any building located within the boundaries of this Commonwealth . . . unless such person shall have secured from the board a certificate of qualification and registration or an affidavit card in the manner herein provided, and shall thereafter com-

ply with the provisions of the law of the Commonwealth of Pennsylvania governing the registration and licensing of architects. The exemptions set forth in paragraph 7 of section 13 of the act apply only to "any resident of this Commonwealth." A nonresident of the State of Pennsylvania performing some of the acts falling within the definition of the act relating to the practice of architecture may thereby become liable to the penalties provided in this act. A nonresident owning property in this State may be restricted to the employment of a duly-qualified person to practice architecture in this State, or a resident property owner may not secure the services of a nonresident architect. Concerns which do Nation-wide construction and building operations may be restricted from proposed operations in this State, and a very serious argument may be made that in this restriction the act under discussion is unreasonable and unconstitutional. But, conceding for the purpose of our present argument that in such unreasonable restrictions this act is unconstitutional, nevertheless, for the purposes of this case, defendant involved is a resident of the Commonwealth of Pennsylvania, and the property involved is situated within the boundaries of this Commonwealth and the act must be construed in respect to this defendant's alleged actions and in the manner in which these provisions impinge upon, restrict, or involve his rights, duties, liberties, and privileges. Therefore, so far as this defendant is concerned, and others in a similar situation and in the same class, the provisions of the act are not unreasonable and consequently not unconstitutional under the hereinbefore-quoted sections of the Constitution of the United States or of the Commonwealth of Pennsylvania.

This court, therefore, finds that section 13 of the Act of July 12, 1919, P. L. 933 (being an act to regulate the practice of architecture), as amended by section 4 of the Act of June 27, 1939, P. L. 1188, does not

violate the provision of the Fourteenth Amendment to the Constitution of the United States, nor article I, sec. 1, of the Declaration of Rights, nor article III, sec. 3, of the Constitution of the Commonwealth of Pennsylvania, insofar as said section is applicable to defendant in this case engaged in preparing plans, specifications, and preliminary data and rendering services to clients by preparation of plans, specifications, and data for the erection and alteration of buildings located in the Commonwealth not having secured from the State Board of Examiners for Architects a certificate of qualification and registration and affidavit card, and who has not brought himself within the provision of the exemption enumerated in the act: Commonwealth v. Romesburg, 91 Pa. Superior Ct. 559, 563; Commonwealth v. Neal, 78 Pa. Superior Ct. 216.

And now, January 5, 1942, it is hereby ordered, adjudicated, and decreed that the motion filed by James Smithgall, defendant, to quash the indictment against him in this case is discharged.